# Exhibit E

FishmanHaygood

Fishman Haygood LLP
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170
fishmanhaygood.com

J. Tyler Marquette
d: 504.586.5268
tmarquette@fishmanhaygood.com

November 7, 2018

3405-01

**CERTIFIED MAIL AND EMAIL**

Darrow Everett LLP
450 Seventh Avenue, #1802
New York, New York 10123
Ann: Joan Toro
Email: jtoro@darroweverett.com

**CERTIFIED MAIL**

635 N. Scott St., LLC
147 Carondelet Street, Suite 1137
New Orleans, LA 70130
Attn: Joshua Bruno

Re: Lease Agreements dated October 25, 2017 (collectively, the "Leases") between 635 N Scott St., LLC ("Landlord") and Sonder USA, Inc. ("Tenant") for lease of Units 1 through 26 (each a "Unit" and collectively, the "Units") of property located at 635 N. Scott Street, New Orleans, LA

Dear Ms. Toro:

Our firm represents Tenant. This letter is in response to your letter dated October 30, 2018. Please accept this letter as Tenant's formal termination of the Leases.

Tenant is not in default of the Leases

Tenant rejects your assertion in your letter dated October 30, 2018 that Tenant is in default of the Leases. Tenant has paid Landlord the rental amounts due under the Leases for October 2018. Tenant ceased its rental operations in the Units, placed the Landlord in default and vacated possession of the Units in October 2018, all as documented in Tenant's October 19, 2018 letter to Landlord (the "Tenant's October Notice"). As further set forth below, Tenant has the right under Louisiana law to offset any additional amounts due to Landlord under the Leases that accrued prior to the date of this termination notice against the damages owed by Landlord to Tenant. Further, I have enclosed the requested certificate of insurance.

Landlord is in default under the Leases

Landlord is in default of its maintenance and repair obligations under the Leases and under Louisiana law. The Leases require the Landlord to "maintain and keep the [Units] and all components in good working order, suitable for residential use, including without limitation, all electrical, mechanical, plumbing, life/life safety, and other building systems of the [Units]." The Landlord's obligations under the Leases are supplemented by

November 7, 2018
Page 2

FishmanHaygood

Landlord's obligations to "maintain the [Units] in a condition suitable for the purpose of which it was leased" and to make "all repairs that become necessary to maintain the thing in a condition settable for the purpose for which it was leased" under Louisiana Civil Code articles 2682 and 2691, respectively.

Landlord breached its obligations to maintain the roof, HVAC, refrigerant lines and other elements of the Units leading to the growth and spread of mold throughout the Units. The report from Dan Paradela of All American Home Inspections (the "Inspection Report") that was enclosed with Tenant's October Notice was based on an unbiased inspection of the Units. It included both visual and air samples. As further described in Tenant's October Notice, the Inspection Report concluded that some combination of roof leaks, HVAC condensation issues, and/or issues with the refrigerant lines caused the mold to form. I have enclosed pictures of the mold located in the air conditioning units located in several of the Units. These pictures were taken by Tenant's air conditioning vendor, Lohaza Development LLC ("Lohaza"). Lohaza notes that Units 9, 10, 14, 15, 16, 21, 22, 23, 25, and 26 had damaged or missing insulation and were leaking. All of these Units, expect for Unit 9, had moderate or high MoldSCOREs in the Inspection Report, supporting the conclusion that the mold is related to defective air conditioning units and the Landlord's failure to maintain the air conditioning units.

Landlord has continued to neglect its maintenance and repair obligations under the Leases and applicable law despite Tenant's numerous notices to Landlord. Tenant provided Landlord in person and electronic notices of the water leaks, air conditioning issues, abnormal amounts of moisture and mold in July, August and September 2018. Tenant followed up these notices with an unbiased third-party inspection, the Inspection Report, and Tenant's formal notice to Landlord in the Tenant's October Notice. As of the date of this Lease, Landlord has not fixed the underlying causes of the mold and has not taken any affirmative steps to remediate the mold in a manner that complies with applicable law and the Leases. Therefore, Landlord is in default of its maintenance obligations under the Leases and Louisiana law.

Landlord is also in default of its warranty against defects under Louisiana law and the Leases. Louisiana landlords provide Louisiana tenants with an implied warranty that the premises are "suitable for the purpose for which it was leased and that it is free of vices or defects that prevent its use for that purpose" under Louisiana Civil Code article 2696. Similarly, Landlord warranted that the Units are in a "good condition" in Section 24 of the Lease. Tenant's acceptance of the Units did not serve as a waiver of this warranty. *Reed v. Classified Parking System*, App. 2 Cir.1970, 232 So.2d 103, *writ denied* 255 La. 1097, 234 So.2d 194, *writ refused* 255 La. 1098, 234 So.2d 194. A defect is a "dangerous condition reasonably expected to cause injury to a prudent person using ordinary care under the circumstances." *Crosby v. Sahuque Realty Company, Inc.*, App. 4 Cir.2017, 234 So.3d 1190, 2017-0424 (La.App. 4 Cir. 12/28/17), *writ denied* 2018-0183 (La. 3/23/18), 2018 WL 1569460. The leaks in the roof of the premises and mechanical problems with the condensers and refrigerant lines in the air conditioning systems in the Units are both defects that when combined with Louisiana's warm and humid climate are reasonably expected to cause mold and other injuries to a prudent tenant.

1378517v1
1378517v.1

November 7, 2018
Page 3

FishmanHaygood

    Tenant further rejects your assertion that "any mold growth in the units is a direct result of Tenant's failure to employ any preventative measures against the growth of mold in the units during and in between rentals, as well as, an abject failure to maintain the units at the conclusion of each rental." This assertion contradicts the findings in the Inspection Report and the pictures taken by Lohaza, both establishing that the mold was caused by Landlord's failure to maintain elements that Landlord is responsible for maintaining under the Leases and Louisiana law. Your assertion is further disproved by the fact that the Inspection Report revealed moderate MoldSCOREs for Units 19 and 20. Tenant never rented either of these units to third-party customers. As such, the mold in these Units could not have been caused by the Tenant's customers or excessive wear and tear attributable to the short-term rentals. Tenant followed its standard on-boarding process, using its regular vendors and rental procedures prior to its discovery of the mold in the Units. Landlords assertions of the Tenant's fault are self-serving and, unlike Tenant's claims, are not supported by third party inspections or reports.

Termination of the Leases

    Tenant hereby exercises its right to terminate the Leases under Louisiana law. Louisiana Civil Code article 2715 provides that if the use of the leased premises is "substantially impaired, the lessee may, according to the circumstances of both parties, obtain a diminution of the rent or dissolution of the lease, whichever is more appropriate under the circumstances." Further, Louisiana courts have long recognized a tenant's right to dissolve a lease under Louisiana Civil Code article 2693 when the landlord's repairs are extensive and cause tenant inconvenience, as well as under Louisiana Civil Code article 2696 when a landlord breaches its implied warranty against defects. Tenant's use of the Premises has been "substantially impaired" by the underlying defective construction, Landlord's failure to make the necessary repairs and the resulting mold. The mold in the Units makes them unfit for residential use and poses a danger to Tenant, its employees, contractors, guests, and subtenants. Further, even if Landlord was willing to make the required repairs and to remediate the mold, the mold remediation would involve extensive repairs and cause extreme inconvenience to Tenant, justifying dissolution of the Lease under Louisiana Civil Code articles 2693 and 2715. Finally, as set forth above, the underlying causes of the mold are defects in the Units under Louisiana Civil Code 2696. Therefore, Tenant is entitled to terminate the Leases.

Tenant's right to damages

    Tenant is also entitled to damages caused by the breach of Landlord's implied warranty against defects under Louisiana Civil Code 2696. Tenant is entitled to recover damages under regardless of the Landlord's fault. *Green v. Hodges Stock Yard, Inc.*, 508 So. 2d 934 (La. Ct. App. 4th Cir. 1987).

    Tenant is also entitled to damages caused by Landlord's fault under Louisiana Civil Code articles 2693, 2696, and 2715. Fault is the breach of a duty owed by one party. *United States Fidelity & Guaranty Co. v. State, Through Department of Highways*, 339 So.2d 780 (La. 1976). "Fault" is a broad concept embracing all conduct falling below

November 7, 2018
Page 4

FishmanHaygood

a proper standard. *Kahoe v. State Farm Mutual Automobile Insurance Co.*, 349 So.2d 1345 (La. App. 1 Cir. 1977), *writ denied*, 350 So.2d 1212 (1977). The Leases do not contain a waiver of Tenant's right to bring a claim for damages under applicable law, including Louisiana Civil Code articles 2693, 2696, and 2715. As established above, Landlord breached its duties by failing to maintain the Units and allowing mold to form in the Units. Landlord continued to breach its maintenance and repair obligations even after Tenant's notices to Landlord, causing mold to continue to spread throughout the Units.

Tenant estimates that it has incurred damages in excess of $370,000. This includes over $300,000 that Tenant spent on fixtures, furniture and equipment currently located in the Units (the "FF&E") that Tenant cannot use at its other rental properties due to their long-term exposure to extreme moisture and mold. It also includes approximately $71,975 in lost revenue from bookings and relocations and approximately $7,000 in professional testing and cleaning. Tenant is prepared to file suit against Landlord to recover these and any other direct, consequential and incidental damages suffered by Tenant.

Tenant's limited settlement offer (for settlement purposes only)

In lieu of filing such a lawsuit, Tenant is willing to sign the enclosed Mutual Releases, Termination of Leases, and Quitclaim of Personal Property for the formal termination of the Leases, release of all claims arising from the Leases and quitclaim of the FF&E located in the Units to Landlord (the "Termination Agreement") provided that Landlord executes and returns its duly authorized executed counterpart to the Termination Agreement to me prior to 5 PM CST on November 13, 2018. The foregoing good faith settlement offer shall automatically expire and be deemed revoked if Landlord does not satisfy the foregoing condition prior to 5 PM CST on November 13, 2018. If Landlord does not accept the foregoing settlement offer in accordance with the paragraph, Tenant is prepared to exercise any and all rights and remedies under the Leases and applicable law based on the legal theories set forth in this letter and any other legal theories to which it may be entitled, including bringing a lawsuit to recover damages from Landlord. Tenant reserves such rights and remedies.

Sincerely,

J. Tyler Marquette

JTM\meb
Enclosures

1378517v1
1378517v.1



Groupe AFER
Cabinet en assurance de dommages

# Insurance certificate

| To: | Name & address of the Insured |
|---|---|
| 635 N Scott Street., LLC (As additional insured but only with respect to a claim arising out of the operations of the named insured) | Sonder Canada Inc. & Sonder USA Inc.<br>15 Marie-Anne O, Suite 201<br>Montreal, QC H2W 1B6 |

30 days' notice of cancellation is given to the above entity      ☒ Yes    ☐ No

**Insurer**  XN Financial (Lloyd's of London) for property & Liability / XN Financial (Lloyd's of London) & SUM Underwriting for excess liability / GUARD Insurance for Workers Compensation

**Operations Covered**  Short term apartment rental, property management & vacation rental services
Global operations covered. (U.S.A included but not limited to)

**Nature of Coverage**  The Limitations below are PER location, not the global limit for ALL locations.
Location covered = 635 North Scott Street, New Orleans, LA, USA, 70119
Unit # 3, 11, 20, 22, 6, 12, 17, 1, 24, 7, 23, 4, 19, 9, 13, 8, 21, 16, 15, 14, 5, 2, 10, 25, 26, 18)

| NATURE OF CONTRACT | INSURANCE COVERAGE | | POLICY N° | EXPIRY DATE |
|---|---|---|---|---|
| Premises Liability USD | Limit per loss / Per Unit: | 2 000 000$ | 44-484-1-0000 | 01/06/2019 |
| Excess Liability | Global Limit | 15 000 000$ | BINDER | 14/08/2019 |
| Worker's Compensation | Limit of Coverage | 1 000 000$ | SOWC7399636 | 25/04/2019 |
| Property Insurance USD | Accidental supplementary coverage | 25 000$ | 44-484-1-0000 | 01/06/2019 |
| | Personal Belongings coverage (per unit) | 75 000$ | 44-484-1-0000 | 01/06/2019 |

*Coverage Details on Premise Liability:*

- Liability to protect the insured & it's guests of ACCIDENTAL damages caused to the registered rental unit by the named insured and any exterior units/building(s).
- Perils covered: If the insured is sued due to damages caused by fire, explosion, water damage or smoke.
-

*Exclusions:*

- Intentional property damage
- Property damage arising out of the use, sale, manufacture, delivery or possession of a controlled substance (all narcotic drugs)

*Robert Farrar*
*Authorized Damage insurance broker*

Signed on: 23.10.2018

AFER GROUP LTD, Damage INSURANCE BROKERAGE FIRM
276, ST-JACQUES, OFFICE 806, MONTRÉAL (QUÉBEC) H2Y 1N3

MUTUAL RELEASES,
TERMINATION OF LEASES,
AND QUITCLAIM OF PERSONAL PROPERTY

635 N Scott St., LLC ("Landlord") and Sonder USA, Inc. ("Tenant") enter into this Mutual Releases, Termination of Leases and Quitclaim of Personal Property (the "Agreement") effective as of November 13, 2018 (the "Termination Date").

RECITALS

WHEREAS, Landlord and Tenant entered into those certain Leases Agreements dated October 25, 2017 (collectively, the "Leases") for the lease of Units 1 through 26 of property located at 635 N. Scott Street, New Orleans, LA as further described in the Leases (collectively, the "Premises"); and

WHEREAS, Landlord and Tenant now desire to terminate the Leases and releases the parties from liability thereunder; and

WHEREAS, in consideration of the quitclaim, transfer, and assignment to Landlord of all fixtures, furniture, equipment, and other personal property owned by Tenant and located on the Premises as of the Termination Date (the "Personal Property"), Landlord and Tenant agree that Landlord shall have exclusive possession of the Premises and that the Leases and Tenant's rights and obligations thereunder shall terminate effective on the Termination Date, subject to the terms set forth below.

NOW, THEREFORE, based upon the parties' mutual desire to terminate the Leases and for other good and valuable consideration, the parties hereby agree as follows:

1. Termination. The Leases shall terminate effective as of the Termination Date subject to the agreements, representations, warranties set forth in this Agreement. As of 11:59 P.M. on the Termination Date, Tenant shall surrender, release and quitclaim possession of the Premises to Landlord and possession shall be finally, completely, and exclusively vested in Landlord free and clear of all claims, interests or rights of Tenant under the Leases and Landlord hereby accepts surrender of the Premises as-is, where-is in its then current condition, subject to any and all vices and defects whatsoever.

2. Releases.

a. Effective as of the Termination Date, Tenant hereby waives, releases and forever discharges Landlord, its successors, assigns, officers, employees, agents, directors, partners, shareholders, subsidiaries, divisions, attorneys, insurers and managers of all obligations, liabilities, claims, demands, or causes of action of whatever nature, accrued or to accrue, whether contingent, now known or unknown, through the Termination Date, arising out of or in any way connected with the Leases, the Premises or the Personal Property.

b. Effective as of the Termination Date, Landlord hereby waives, releases and forever discharges Tenant, its successors, assigns, officers, employees, agents, directors, partners,

1379774v1

shareholders, subsidiaries, divisions, attorneys, insurers and managers of all obligations, liabilities, claims, demands, or causes of action of whatever nature, accrued or to accrue, whether contingent, now known or unknown, through the Termination Date, arising out of or in any way connected with the Leases, the Premises or the Personal Property.

    3.    <u>Quitclaim of the Personal Property</u>.

    a.    Effective as of the Terminate Date and in consideration for the termination and releases set forth above, Tenant hereby transfers, conveys, quitclaims, assigns to, and vests in the Landlord, its successors and assigns forever, all such Tenant's right, title and interest, if any, in and to the Personal Property without any warranties whatsoever.

    b.    AS A MATERIAL PART OF THE CONSIDERATION FOR THIS AGREEMENT, TENANT AND LANDLORD AGREE THAT LANDLORD IS ACQUIRING THE PERSONAL PROPERTY "AS IS" WITH ALL FAULTS AND DEFECTS, LATENT AND PATENT, AND LANDLORD ACKNOWLEDGES AND AGREES THAT TENANT HAS NOT MADE, DOES NOT MAKE AND SPECIFICALLY DISCLAIMS ANY REPRESENTATIONS, WARRANTIES, PROMISES, COVENANTS, AGREEMENTS, OR GUARANTIES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE, OF, AS TO, CONCERNING OR WITH RESPECT TO (A) THE NATURE, QUALITY OR CONDITION OF THE PERSONAL PROPERTY, INCLUDING, WITHOUT LIMITATION, THE PRESENCE OR ABSENCE OF ANY POLLUTANT, MOLD, HAZARDOUS WASTE, GAS OR SUBSTANCE OR SOLID WASTE ON OR ABOUT THE PERSONAL PROPERTY, (B) THE INCOME TO BE DERIVED FROM THE PERSONAL PROPERTY, (C) THE SUITABILITY OF THE PERSONAL PROPERTY FOR ANY AND ALL ACTIVITIES AND USES WHICH LANDLORD MAY INTEND TO CONDUCT THEREON, (D) THE COMPLIANCE OF OR BY THE PERSONAL PROPERTY OR ITS OPERATION WITH ANY LAWS, RULES, ORDINANCES OR REGULATIONS OF ANY GOVERNMENTAL AUTHORITY OR BODY HAVING JURISDICTION INCLUDING WITHOUT LIMITATION, ALL APPLICABLE ZONING LAWS, (E) THE HABITABILITY, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF THE PERSONAL PROPERTY, (F) TITLE OR MERCHANTABILITY OR (G) ANY OTHER MATTER RELATED TO OR CONCERNING THE PERSONAL PROPERTY. LANDLORD SHALL NOT SEEK RECOURSE AGAINST TENANT ON ACCOUNT OF ANY LOSS, COST OR EXPENSE SUFFERED OR INCURRED BY LANDLORD WITH REGARD TO ANY OF THE MATTERS DESCRIBED IN CLAUSES (A) THROUGH (G) ABOVE AND HEREBY ASSUMES THE RISK OF ANY ADVERSE MATTERS RELATED TO THE MATTERS DESCRIBED IN CLAUSES (A) THROUGH (G) ABOVE FROM AND AFTER THE TERMINATION DATE. LANDLORD ACKNOWLEDGES THAT LANDLORD, HAVING BEEN GIVEN THE OPPORTUNITY TO INSPECT THE PERSONAL PROPERTY, IS RELYING SOLELY ON ITS OWN INVESTIGATION OF THE PERSONAL PROPERTY AND NOT ON ANY INFORMATION PROVIDED OR TO BE PROVIDED BY OR ON BEHALF OF TENANT OR ANY STATEMENT, REPRESENTATION OR OTHER ASSERTION MADE BY TENANT WITH RESPECT TO THE PERSONAL PROPERTY. LANDLORD FURTHER ACKNOWLEDGES THAT NO INDEPENDENT INVESTIGATION OR VERIFICATION HAS BEEN OR WILL

1379774v1

BE MADE BY TENANT WITH RESPECT TO ANY INFORMATION SUPPLIED BY OR ON BEHALF OF TENANT CONCERNING THE PERSONAL PROPERTY, AND TENANT MAKES NO REPRESENTATION AS TO THE ACCURACY OR COMPLETENESS OF SUCH INFORMATION, IT BEING INTENDED BY THE PARTIES THAT LANDLORD SHALL VERIFY THE ACCURACY AND COMPLETENESS OF SUCH INFORMATION ITSELF. LANDLORD ACKNOWLEDGES THAT THE DISCLAIMERS, AGREEMENTS AND OTHER STATEMENTS SET FORTH IN THIS SECTION ARE AN INTEGRAL PORTION OF THIS AGREEMENT AND THAT TENANT WOULD NOT AGREE TO TRANSFER THE PERSONAL PROPERTY TO LANDLORD WITHOUT THE DISCLAIMERS, AGREEMENTS AND OTHER STATEMENTS SET FORTH IN THIS SECTION.

4. The undersigned parties acknowledge that each has read this Agreement, had an opportunity to review the Agreement with their respective counsel and fully understand the Agreement. The recitals above are incorporated by reference into the terms of this Agreement.

5. The parties represent to each other that they have not assigned, transferred or otherwise alienated their respective interests in or claims related to the Leases to any other entity. The individuals executing this Agreement on behalf of the parties are authorized to do so by appropriate actions of each party. No third party approvals or consents are required for each respective party to enter into this Agreement.

6. This Agreement cancels, supersedes and replaces all prior agreements between the parties, including but not limited to, the Leases. All rights and obligations of the parties under such agreements are terminated, compromised and liquidated pursuant to the terms of this Agreement.

7. This Agreement shall be binding upon and inure to the benefit of Landlord and Tenant and their respective successors, assigns and related entities.

8. The terms and conditions of this Agreement will remain private and confidential and are not to be disclosed or disseminated except to the parties' officers, attorneys, insurers, financial advisors, lenders and/or successors in interest or potential successors in interest or as required by a court of competent jurisdiction.

9. If either party institutes a suit against the other for violation of or to enforce any covenant, term or condition of this Agreement or in violation of the terms of this Agreement, the prevailing party shall be entitled to reimbursement of all of its costs and expenses, including, without limitation, reasonable attorneys' fees.

10. This Agreement may be executed in original or electronic counterparts, each of which shall be deemed an original and all of which shall constitute the same instrument.

[Signature Page Follows]

1379774v1

IN WITNESS WHEREOF, the parties have executed this Agreement as of the dates written below, but effective as of the Termination Date.

LANDLORD:

**635 N Scott St., LLC**

By: _____
Print Name: _____
Title: _____

Date: November _____, 2018

TENANT:

**Sonder USA, Inc.**

By: _____
Print Name: _____
Title: _____

Date: November _____, 2018

1379774v1