UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **SONDER USA, INC** | * | |
| | * | **CIVIL ACTION NO.:  18-13891** |
| | * | |
| **VERSUS** | * | |
| | * | **JUDGE: NANNETTE** |
| | * | **JOLIVETTE BROWN** |
| | * | |
| **635 N. SCOTT, L.L.C.** | * | **MAGISTRATE: JUDGE MICHAEL** |
| | * | **NORTH** |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**ANSWER AND COUNTERCLAIM ON BEHALF OF 635 N. SCOTT ST., L.L.C.**

**NOW INTO COURT**, through undersigned counsel comes, 635 N. Scott St., LLC, (erroneously referred to as 635 N. Scott, LLC in the plaintiff's original petition) which respectfully responds to the Petition for Declaratory Judgment filed by Sonder USA, Inc. as follows:

I.

The allegations of paragraph I of the Petition are admitted.

II.

The allegations of paragraph II of the Petition are admitted.

III.

The allegations regarding jurisdiction venue in the petition referred to jurisdiction and venue of the state court. Those allegations are denied. Defendant has removed this matter, and submits that jurisdiction and venue are proper in the United States District Court for the Eastern District of Louisiana.

IV.

The allegations of paragraph IV of the Petition are denied..

1

V.

The allegations of paragraph V of the Petition are denied for lack of sufficient proof to justify a belief therein. Furthermore, the provisions of the leases speak for themselves, and defendant demands strict proof thereof.

VI.

The allegations of paragraph VI of the Petition are denied.

VII.

The allegations of paragraph VII of the Petition are denied. As noted below, All American is not a licensed mold contractor.

VIII.

The allegations of paragraph VIII of the Petition are denied.

IX.

The allegations of paragraph VIII of the Petition are denied for lack of sufficient proof to justify a belief therein.

X.

It is admitted that Sonder sent All American's findings to defendants. However, as discussed below, the findings of All American are subject to dispute, for numerous reasons, including the lack of expertise of the inspectors, and use of improper methods. Furthermore, the actions of Sonder were intended to deceive defendant regarding the alleged presence of harmful mold.

XI.

The allegations of paragraph XI of the Petition are denied for lack of sufficient proof to justify a belief therein.

XII.

The allegations of paragraph VIII of the Petition are denied.

XIII.

It is admitted that counsel for Sonder sent a letter to counsel for defendant 635 N. Scott purporting to terminate the leases. The remaining allegations of paragraph VIII of the Petition are denied for lack of sufficient proof to justify a belief therein.

XIV.

Defendant admits that Sonder filed an action which seeks to terminate the 26 leases between the parties. Defendant denies that Sonder is entitled to the relief which it has sought through its petition.

## COUNTERCLAIM OF 635 N. SCOTT. ST., L.L.C.

AND NOW, in further response to the Petition filed by plaintiff Sonder USA Inc., defendant 635 N. Scott St., L.L.C. assumes the role of counterclaim plaintiff, and respectfully asserts as follows:

## THE PARTIES

1. Counterclaim plaintiff 635 N. Scott St., L.L.C. is a limited liability company organized and existing under the laws of the State of Louisiana with a single member, namely Joshua Bruno, who is a citizen, resident, and domiciliary of the State of Florida.

2. Counterclaim defendant herein is Sonder USA, Inc, a corporation organized and existing under the laws of the State of Delaware.

## JURISDICTION AND VENUE

3. This court has jurisdiction over this matter pursuant to the provisions of 28 USC 1331, as there is complete diversity of citizenship between the plaintiff limited liability company and the defendant corporation, and the amount in controversy in this matter is in excess of seventy five thousand (75,000) dollars.

4. Venue is proper in this district pursuant to 28 USC Section 1391 as the events or omissions

giving rise to the claims arose in this district.

## FACTUAL ALLEGATIONS

5. Counterclaim plaintiff 635 N. Scott St., LLC is the owner of real property located at 635 N. Scott Street, New Orleans, Louisiana. The property consists of twenty-six apartment units.

6. In September of 2017 counterclaim plaintiff entered into a series of twenty six leases with counterclaim defendant Sonder USA, Inc. The leases were each for a period of five years and most commenced in late 2017 or early 2018. Twenty-five of the lease agreements involved one bedroom apartments, for which Sonder was to pay rent in the amount of $1,500 per year. A twenty-sixth apartment, Unit 8, a two bedroom apartment, was leased to Sonder for the sum of $2,000 per month.

7. Upon the occupancy date of the various leases Sonder took possession of the units and began to advertise them as available for sublease.

8. On October 19, 2018, Sonder representative Nicole Elia sent a letter to counterclaim plaintiff 635 N. Scott, enclosing a report from a purported "environmental expert", Mr. Dan Paradela of All American Inspections.

9. The report of All American reflected that the company had performed a "limited visual inspection" for mold in the leased apartments, and that they had also collected air samples. Based upon those admittedly limited inspections and samples, All American's October 16, 2018 report made the following assertions:

    a. Visible mold was noted in most of the apartment units;

    b. Active moisture detected on several ceilings that appears to be either roof leaks and/or HVAC condensation issues;

    c. There appear to be issues with refrigerant lines not properly insulated, and that there was the possibility of hidden mold growth in underlying building materials;

    d. More than half of the units had interior humidity levels above 65%;

    e. Bathroom exhaust fans do not vent to exterior of building;

      f.      Laminate floor coverings are buckling, adhesives are detaching from subfloor surface;

      g.      Mold and moisture staining was visible on the inside of electric panels.

10.      The October 16, 2018 report from All American Inspections further advised that:

*Due to the elevated mold findings in the interior of the units, a state licensed, mold remediation contractor is highly recommended to further assess and perform mold remediation following EPA guidelines, before any of the units are re-occupied.*

11.      The October 19, 2018 letter from Sonder further advised that in light of the findings of All American, all twenty six of the leased apartments were "unfit for residential use" and that they pose "a danger" to Sonder, "its employees, contractors, guests, and subtenants."

12.      The October 19, 2018 letter from Sonder demanded that 635 N. Scott "*promptly take immediate steps to remediate the mold problem and its underlying causes, including hiring a state licensed mold remediation contractor to remediate the mold and notifying Landlord's insurance carrier of the issue.*"

13.      635 N. Scott disagreed with the conclusions reached by Sonder and its mold "expert", and noted that it was the obligation of Sonder to maintain the units on a regular basis such that surface mold would not accumulate. 635 N. Scott further observed that many of the conclusions reached by All American were simply wrong. For instance, contrary to the claims of Mr. Paradela, all of the bathroom vent fans did in fact vent to the exterior of the units. Likewise, there were no roof leaks providing a source of moisture for mold to grow.

14.      Moreover, due diligence revealed that the license held by All American was for home inspections, not for mold inspections or remediation. Furthermore, the methods and tools used by All American do not appear to be of the type typically relied upon by experts in the field of mold inspection and remediation.

15. In light of the highly suspect "mold report" prepared by All American, 635 N. Scott engaged Mr. Brent Driskill of Driskill Environmental Consultants LLC. Unlike the employees of All American, Mr. Driskill holds a license to engage in mold remediation work, issued by the Louisiana State Licensing Board for Contractors.

16. Mr. Driskill conducted a thorough inspection of the leased premises on November 8, 9, 12, and 13, 2018 and thereafter issued an inspection report detailing his findings, including the following:

    a. There were no mold related health hazards contained within the building or any of the apartments;

    b. There was no systemic water damage to the apartments caused by excessive water entry;

    c. No water damage was observed during the inspection using visual, infrared thermography or other methods;

    d. High laboratory mold spore count observed by "others" were not experienced during Mr. Driskill's inspection;

    e. Virtually none of the mold surface contamination displayed in photographs by the prior inspectors was found by Mr. Driskill during his inspection. Since those units had not been remediated or cleaned by defendant 635 N. Scott, there began to arise a suspicion that the findings of mold by All American had been fabricated;

    f. Comparison of air samples by Driskill with those taken by "others" are drastically different, for reasons which are unexplainable at this time. While Driskill used sampling methods approved in the industry, the sampling methods used by the "other" inspector could not be verified;

    g. Based upon Driskill's findings there had been some level of remediation and cleaning performed in the apartments. Alternatively, if no cleaning had been performed, then "there was never actually an issue in the apartment building due to fraud or improper sampling";

    h. In light of the absence of excessive water damage materials, Driskill concluded that any prior mold contamination must have been caused by incidental dew point moisture rather than systemic water intrusion. To the extent that mold colonies had been observed on surfaces in the apartments they could be easily remediated using hydrogen peroxide;

      i.      Inspection of the apartments revealed that the air conditioning systems were being operated below normally acceptable indoor air temperatures. This could result in a creation of "dew point" molds;

17. On October 30, 2018 counsel for 635 N. Scott Street, LLC directed a letter to Sonder USA, Inc. rejecting Sonder's assertions that mold in the units rendered them uninhabitable or that landlord was somehow in default of its obligations under the leases. The letter further pointed out deficiencies in the mold inspection report and the lack of qualifications of the mold remediation company retained by Sonder.

18. On November 7, 2018 Sonder through counsel, responded to the October 30, 2018 letter from 535 N. Scott's counsel. At that time Sonder continued to maintain that there was unacceptable mold contamination in the apartments and that this contamination resulted from the fault or neglect of the landlord 635 N. Scott Street, LLC.

19. The November 7, 2018 letter from counsel for Sonder purported to exercise Sonder's right to terminate the leases due to the fact that the premises were "substantially impaired" by defective construction and resulting mold conditions.

20. Counsel's November 7 letter further alleged that Sonder had suffered damages as a result of the mold contamination, estimated as being in excess of $375,000. Counsel proposed that the parties enter into an agreement for termination of the leases, quit-claim of the personal property and mutual releases. In the event that 635 N. Scott refused to enter into the proposed agreement, counsel for Sonder advised that it would bring a lawsuit to recover damages.

21. Counterclaim plaintiff 635 N. Scott Street, LLC declined to enter into the proposed termination of the leases. Thus, on December 10, 2018 Sonder USA, Inc. filed a petition in Civil District Court for the Parish of Orleans.

22. Although styled as a petition for declaratory judgment, the petition of Sonder USA, Inc. seeks to have the court cancel the twenty six (26) lease agreements entered into by the parties.

## COUNT I
## BREACH OF CONTRACT

23	Counterclaim plaintiff 635 N. Scott Street, LLC re-alleges and re-avers the allegations of paragraphs 1-22 as if copied herein *in extenso.*

24.	The twenty six (26) lease agreements between the parties provide that monthly rental payments are "payable in advance on or before the first day of each month to lessor via ACH wire transfer and without demand."

25.	Counterclaim defendant Sonder USA, Inc. has failed to pay rent on any of the 26 apartments since September of 2018. Notice of default and formal demand for payment was made upon Sonder on October 30, 2018, through the letter of 635 N. Scott's attorney Joan Toro. Despite notice and opportunity to cure Sonder has failed to make payment and is in breach of all twenty six (26) lease agreements between the parties.

26.	At the present time outstanding rent is due and owning for the months of January 2019, December 2018, November 2018, and October 2018. The total rent owed is $1,500 per month on twenty five (25) leases and $2,000 per month on the one (1) additional lease. As of January 2019, and each month thereafter until the trial of this matter is held, counterclaim defendant Sonder will owe the lease payments for all twenty six (26) apartments, which total monthly lease payment is $39,500 per month, plus 10% late fees as provided for by the leases, as well as interest at the rate of 12% per annum, or the highest amount permitted by law, as provided for by the leases.

27.	The lease agreements between the parties do not contain acceleration clauses. Accordingly, counterclaim plaintiff 635 N. Scott seeks all damages arising out of Sonder's failure to pay rent, in the amount of $39,500 per month, which accrue until the trial of this matter.

## COUNT II
## VIOLATION OF LOUISIANA UNFAIR TRADE PRACTICES ACT

28. Counterclaim plaintiff 635 N. Scott Street, LLC re-alleges and re-avers the allegations of paragraphs 1-27 as if copied herein *in extenso.*

29. This cause of action is brought under the Louisiana Unfair Trade Practices and Consumer Protection Law which prohibits acts of unfair competition, which means and includes any "unfair competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." It is alleged that defendant Sonder USA violated the Louisiana Unfair Trade Practices Act's prohibition against engaging in "unfair or deceptive acts" including the misrepresentations, deceptive statements and omissions communicated to 635 N. Scott in an attempt to force cancellation of the Leases.

30. Since the time that parties entered into the twenty six leases there have been significant changes in the short term rental marketplace. For instance, the City of New Orleans enacted an ordinance which places significant limitations upon short term rentals. Moreover, there has been a reduction in demand for short term rentals, particularly in the area of Mid City. Although Sonder reduced its rental rates in an effort to stimulate rentals, it was not successful.

31. In light of the fact that Sonder was unable to generate sufficient rental income from the twenty six units, it sought to manufacture grounds for termination of the leases with 635 N. Scott.

32. As part of its plan to terminate the leases, Sonder and its agents and representatives had a home inspection company generate a mold report, purporting to show a dangerous mold contamination of the units.

33. Sonder and its agents and representatives knew or should have known that the home inspection company it retained, All American Inspections, was not licensed to evaluate or remediate mold contamination.

34. Likewise, based upon the reports generated by All American and Driskill Environmental Consultants LLC, Sonder and its agents and representatives knew or should have know the "mold report" generated by All American did not disclose any the existence of any mold related health hazards contained within the building or any of the apartments.

35. The report of Driskill Environmental gave Sonder and its and its agents and representatives notice of the following facts:

   a. No water damage was observed during the Driskill inspection using visual, infrared thermography or other methods;

   b. High laboratory mold spore count observed by All American were not experienced during Mr. Driskill's inspection;

   c. All mold surface contamination displayed in photographs taken by All American had been entirely removed or remediated (with the exception of one apartment) prior to the inspection by Driskill;

   d. Comparison of air samples by Driskill with those taken by All American are drastically different, for reasons which are unexplainable at this time. While Driskill used sampling methods approved in the industry the sampling methods used by All American inspector could not be verified;

   e. Based upon Driskill's findings there had been some level of remediation and cleaning performed in the apartments. Alternatively, if no cleaning had been performed, then "there was never actually an issue in the apartment building due to fraud or improper sampling";

   f. Inspection of the apartments revealed that the air conditioning systems were being operated below normally acceptable indoor air temperatures. This could result in a creation of "dew point" molds;

36. Sonder was further placed on notice, through the report of its own expert, Mr. Dan Paradela of All American, that "*a state licensed, mold remediation contractor is highly recommended to further assess and perform mold remediation following EPA guidelines.*" Despite that advice from its own expert, Sonder failed to retain a state licensed, mold remediation contractor to evaluate the property, and it failed to conduct an analysis of the alleged contamination following EPA guidelines.

37. Despite being on notice of the true facts, as determined by a licensed expert using the appropriate tools and sampling methods, Sonder and its agents and representatives continue to maintain that the twenty six units contain levels of mold contamination which render them unfit for habitation.

38. Sonder and its agents and representatives made a deliberate and knowing decision to commission a mold report from an unqualified home inspection company, using methods and equipment which did not satisfy EPA guidelines. Despite evidence showing extreme deficiencies in that report and its conclusions, Sonder continues to rely upon the report in support of its demand for cancellation of the leases.

39. The actions of counterclaim defendant Sonder described above were undertaken in order to attempt to create false grounds for termination or cancellation of the leases with 635 N. Scott. Sonder knew or should have known that the levels of mold in the units did not constitute a health hazard.

40. Moreover, Sonder knew or should have known that its own actions in failing to properly clean and maintain the units would tend to cause the accumulation of dew point surface mold. This is particularly true in light of the fact that evidence from Driskill showed that the air conditioning units in the apartments were set to maintain unusually low temperatures, which resulted in condensation and surface mold.

41. The actions of Sonder, in commissioning a deceptive and misleading "mold report" in order to support its demand for cancellation of the twenty six leases, constitute a practice which "offends established public policy" and which was "immoral, unethical, oppressive, unscrupulous, or substantially injurious" to counterclaim plaintiff. As such, Sonder's conduct was in violation of the Louisiana Unfair Trade Practices Act, R.S. 51:1401 (The "Act"). See *Boudreaux v. OS Rest. Servs., L.L.C.*, No. 14-1169, (E.D. La, 1/13/2015) (Africk, J.); *Gearheard v. De Puy Orthopaedics, Inc.*,

No. 99-1091, 2000 U.S. Dist. LEXIS 6473, 2000 WL 533352 (E.D. La. Mar. 17, 2000) (Clement, J.); *Landrum v. Bd. of Comm'rs of the Orleans Levee Dist*., 685 So. 2d 382, 389 n.5 (La. App. 4 Cir. 1996); *Preis v. Standard Coffee Serv. Co*., 545 So.2d 1010, 1013 (La. 1989).

42. Counterclaim defendant Sonder USA is liable unto counterclaim plaintiff for all damages sustained as a result of defendant's wrongful conduct, including the cost of retaining qualified and licensed experts to conduct a proper mold analysis of the units, as well as reasonable attorney's fees and penalties, including treble damages as provided for by the provisions of the Act.

**WHEREFORE,** counterclaim plaintiff 635 N. Scott Street, LLC prays that this counterclaim be filed and served upon counterclaim defendant Sonder USA, Inc. and that after due proceedings had that judgment be rendered herein in favor of counterclaim plaintiff 635 N. Scott Street, LLC and against counterclaim defendant Sonder USA, Inc., granting counterclaim plaintiff 635 N. Scott Street, LLC all damages which it may be entitled to as a matter of law as well as any further relief as equity and the cause may require.

Respectfully submitted,

s/Vincent J. Booth
VINCENT J. BOOTH (#18565)
Booth & Booth, APLC
138 North Cortez Street
New Orleans, Louisiana 70119
Telephone: (504) 482-5292
Facsimile: (504) 482-5847
Email: vbooth@boothandbooth.com