**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

SONDER USA, INC.                                        CIVIL ACTION

VERSUS                                                 CASE NO. 18-13891

635 N. SCOTT, LLC                                      SECTION: "G"(5)

## ORDER AND REASONS

In this litigation, Plaintiff Sonder USA, Inc. ("Plaintiff") brings claims against Defendant 635 N. Scott, LLC ("Defendant") for allegedly failing to remedy maintenance issues in 635 Scott's apartments.[1] Before the Court is Plaintiff's "Motion for Summary Judgment."[2] Also before the Court is Plaintiff's "Motion to Strike Affidavit of Joshua L. Bruno."[3] Oral argument was heard on the motions via video conference on July 29, 2020.[4] Considering the motions, the memoranda in support and in opposition, the record, and the applicable law, the Court converts Plaintiff's motion to strike to objections to the evidence, denies the objections as moot, and denies Plaintiff's motion for summary judgment.

## I. Background

On December 10, 2018, Plaintiff filed a Petition for Declaratory Judgment in the Civil District Court for the Parish of Orleans.[5] In the Petition, Plaintiff alleges that it leased 26

---

[1] Rec. Doc. 1-2; Rec. Doc. 32.

[2] Rec. Doc. 69.

[3] Rec. Doc. 80.

[4] Rec. Doc. 91.

[5] Rec. Doc. 1-2 at 1.

1

apartments from Defendant to start a short-term rental business.[6] Plaintiff alleges that Defendant was responsible for each apartment's maintenance and failed to address mold, leaking air conditioning units, and other defects in the apartments.[7] As a result, Plaintiff seeks termination of the 26 lease agreements.[8]

On December 17, 2018, Defendant removed the case to this Court.[9] On January 17, 2019, Defendant filed an Answer and brought counterclaims against Plaintiff for breach of contract and violation of the Louisiana Unfair Trade Practices and Consumer Protection Law.[10]

On May 30, 2019, Plaintiff filed a First Amended and Restated Complaint for Declaratory Judgment and Damages.[11] In the amended complaint, Plaintiff brings the following claims: (1) a claim for declaratory judgment that Defendant was in default of the leases and that the leases are terminated; (2) a claim for breach of warranty; (3) a claim for breach of contract; and (4) a claim for lost profits.[12]

On September 30, 2019, Defendant filed a First Amended and Restated Counterclaim.[13] In the First Amended and Restated Counterclaim, Defendant brings claims for breach of contract and violation of the Louisiana Unfair Trade Practices and Consumer Protection Law.[14] Defendant

---

[6] *See id.*

[7] *Id.* at 2.

[8] *Id.* at 3.

[9] Rec. Doc. 1.

[10] Rec. Doc. 10 at 8–9.

[11] Rec. Doc. 32.

[12] *Id.*

[13] Rec. Doc. 48.

[14] *Id.*

2

contends that Plaintiff breached the 26 lease agreements by failing "to pay rent on any of the 26 apartments since September of 2018."[15] Defendant also contends that Plaintiff violated the Louisiana Unfair Trade Practices and Consumer Protection Law because Plaintiff "sought to manufacture grounds" to terminate the 26 lease agreements when it hired an unlicensed home inspection company to inspect mold contamination and prepare a report.[16]

On June 30, 2020, Plaintiff filed the instant motion for summary judgment.[17] On July 7, 2020, Defendant filed an opposition to the motion for summary judgment.[18] On July 17, 2020, with leave of Court, Defendant filed a reply brief in further support of the motion for summary judgment.[19] On July 14, 2020, Plaintiff filed the "Motion to Strike Affidavit of Joshua L. Bruno."[20] On July 21, 2020, Defendant filed an opposition to the motion to strike.[21] The Court heard oral arguments on the motions via video conference on July 29, 2020.[22]

---

[15] *Id.* at 8.

[16] *Id.* at 11.

[17] Rec. Doc. 69.

[18] Rec. Doc. 76.

[19] Rec. Doc. 95.

[20] Rec. Doc. 80.

[21] Rec. Doc. 100.

[22] Rec. Doc. 91.

## II. Parties' Arguments

*A.*     *Plaintiff's Motion for Summary Judgment*

**1.       Plaintiff's Arguments in Support of the Motion for Summary Judgment**

Plaintiff asserts that there is no genuine dispute that Defendant breached its obligations and warranties under its leases and under Louisiana law.[23] Therefore, Plaintiff seeks summary judgment on liability for Counts I, II and III of the Amended Complaint and on Count I of Defendant's Amended Counterclaim.[24]

First, Plaintiff asserts that Defendant breached its warranty under Louisiana law that the apartment units were suitable for the purpose for which they were leased and free from vices or defects.[25] According to Plaintiff, the warranty provided in Louisiana Civil Code articles 2696 and 2697 essentially creates strict liability for landlords for vices and defects, even when the parties to the lease agree that the lessee is responsible for maintaining the property.[26] According to Plaintiff, it is undisputed that mold was found, at various times, in Units 5, 10, 13, 15, 19, 21, 22, 23, 24, 26.[27] Plaintiff contends that mold is a dangerous condition, presenting an unreasonable risk of harm.[28]

Plaintiff also asserts that Defendant breached its warranty under the leases the apartment units were in good condition.[29] Plaintiff contends that the undisputed evidence shows that the

---

[23] Rec. Doc. 69 at 1.

[24] *Id.*

[25] Rec. Doc. 69-1 at 8.

[26] *Id.*

[27] *Id.* at 9.

[28] *Id.*

[29] *Id.*

4

units were not in fact in good condition when delivered to Plaintiff and that Defendant was aware of this fact. According to Plaintiff, before Defendant delivered the units to Plaintiff, Defendant was aware that there were maintenance issues, in some cases repeated, associated with the air conditioning units in Units 10, 14, 18, 19, 22, and 23.[30] Additionally, Plaintiff notes that an HVAC technician later confirmed that in three other Units (1, 14, and 16), the air conditioning systems had been "neglected for a long time," causing "mold spread."[31] Therefore, Plaintiff asserts that the apartment units, particularly with respect to their HVAC systems, were not in good condition when delivered.[32] Therefore, Plaintiff asserts it is entitled to a judgment as a matter of law in its favor on Defendant's liability for Count II of the Amended Complaint, holding that 635 N. Scott breached its warranties under Louisiana law and Paragraph 24 of the leases.[33]

Second, Plaintiff argues that Defendant breached its contractual obligation to perform necessary maintenance and repairs.[34] Plaintiff asserts that Defendant was obligated to "perform repairs necessary to maintain and keep the Premises and all components in good working order, suitable for residential use, including, without limitation, all electrical, mechanical, plumbing, fire/life safety, and other building systems of the Premises."[35] According to Plaintiff, Defendant failed to fulfill this obligation.[36]

---

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.* at 10.

[34] *Id.*

[35] *Id.*

[36] *Id.* at 11.

Third, because Defendant breached its obligations and warranties, Plaintiff asserts it is also entitled to judgment as a matter of law on Count I of the Amended Complaint and Count I of Defendant's Amended Counterclaim.[37] Plaintiff contends it had the right to dissolve the leases under Louisiana Civil Code articles 2715 and 2719.[38] Additionally, Plaintiff asserts it had the write to cancel the lease under Louisiana Civil Code articles 2014 and 2015 because it provided Defendant with a notice to remediate the mold, but Defendant failed to perform its obligations.[39]

### 2.     Defendant's Arguments in Opposition to the Motion for Summary Judgment

In opposition, Defendant argues that Plaintiff ignores the fact that it accepted the apartment units after inspection and agreed to maintain the units in the same condition in which they were delivered.[40] Although Plaintiff points to evidence showing previous tenants of the property experienced similar issues related to leaking air conditioners and/or alleged mold, Defendant cites an affidavit of Joseph Bruno to establish the causes of each of these issues.[41] According to Mr. Bruno's affidavit, other tenants, like Plaintiff, failed to properly operate the air conditioning units and failed to routinely clean the indoor air filters.[42] Similarly, Mr. Bruno attests that this contributed to the cause of the alleged mold in Unit 19.[43] Moreover, Mr. Bruno stated that Defendant immediately investigated each of these complained of issues and, similar to its experience with Plaintiff, informed the prior tenants that the air conditioning filters must be

---

[37] *Id.*

[38] *Id.*

[39] *Id.* at 12.

[40] Rec. Doc. 76 at 12.

[41] *Id.* at 12 (citing Rec. Doc. 76-5).

[42] *Id.* at 13–14 (citing Rec. Doc. 76-5).

[43] *Id.* at 14 (citing Rec. Doc. 76-5).

properly cleaned and the units properly operated in order to avoid condensation in the unit and possible leakage from the air conditioner itself.[44] In contrast, Defendant asserts that the air conditioning units were installed correctly and were in good, working condition when Plaintiff took possession of the apartment units.[45]

Next, Defendant asserts that Plaintiff caused the alleged mold and leaking air condition units.[46] Defendant contends that it repeatedly informed Plaintiff that surface mold would accumulate or the air conditioners would leak if the air conditioning units were improperly used.[47] According to Defendant, Plaintiff's own HVAC technician confirmed that the air conditioning units had "been neglected for a long time" which "caused mold to spread inside of the units."[48] Defendant asserts that this caused "buildup on the blower" which "reduces efficiency causing it to work longer to reach desirable temperature."[49] Had Plaintiff regularly washed the filters and operated the units at the appropriate temperature, Defendant argues the significant leaks and alleged mold issues would have been avoided.[50]

According to Defendant, under the terms of the leases, Plaintiff was responsible for keeping the units "in the same condition during the term of this lease at his expense."[51] Defendant asserts that it was only required to "perform repairs necessary to maintain and keep the Premises

---

[44] *Id.* (citing Rec. Doc. 76-5).

[45] *Id.*

[46] *Id.*

[47] *Id.* at 15–17.

[48] *Id.* at 17.

[49] *Id.*

[50] *Id.*

[51] *Id.* at 18.

and all components in good working order, suitable for residential use, including, without limitation, all electrical, mechanical, plumbing, fire/life safety, and other building systems of the Premises."[52] According to Defendant, even disagreement over the general definition of "repair" would render Plaintiff's breach of contract claim meritless, as "repair" is generally defined as "to restore by replacing a part or putting together what is torn or broken."[53] Thus, Defendant argues that under this generally prevailing meaning, Defendant's obligation to perform "repairs" does not include the obligation to routinely clean the air conditioning filters or to set the thermostat at appropriate temperatures in the units in Sonder's possession.[54] Accordingly, Defendant asserts any damages to the apartment units that resulted from Plaintiff's misuse of the air conditioning units is attributable to Plaintiff's failure to meet its own obligations under the lease.[55]

Finally, Defendant asserts that Plaintiff sought to terminate the leases because the units were allegedly "uninhabitable" due to mold.[56] However, Defendant contends that the All American Reports, upon which Plaintiff based the termination, were inconclusive or did not detect the presence of mold in 16 of the units tested.[57] Defendant concedes that high mold scores were reported in nine of the units, but Defendant contends that the All American Reports did not determine that those nine units were uninhabitable.[58] Additionally, Defendant argues that the evidence suggests that the mold was caused by "HVAC condensation issues" resulting from

---

[52] *Id.* at 19.

[53] *Id.*

[54] *Id.*

[55] *Id.*

[56] *Id.* at 20.

[57] *Id.*

[58] *Id.*

failing to clean the air conditioning filters.[59] Therefore, Defendant argues that Plaintiff had no basis to unilaterally terminate the leases.[60]

### 3.   Plaintiff's Arguments in Further Support of the Motion for Summary Judgment

In reply, Plaintiff objects to the affidavit of Joshua Bruno.[61] According to Plaintiff, that affidavit violates the sham affidavit rule, because it attempts to manufacture disputes of fact merely to defeat summary judgment and contradicts Mr. Bruno's prior deposition testimony.[62] Alternatively, even if the Court does not strike the affidavit on that basis, Plaintiff contends that the affidavit contains inadmissible hearsay and improper expert testimony.[63]

Next, Plaintiff asserts that its contractual acceptance of the apartment units in their current condition is not a waiver of Defendant's warranty that the units were free from vices or defects, particularly because Plaintiff alleges that Defendant concealed those defects.[64] Plaintiff contends that the undisputed evidence shows that the air conditioning units were not working before Plaintiff took possession, and this repeatedly resulted in mold complaints from prior tenants.[65]

Next, Plaintiff argues that the persistent mold was due to the fault of Defendant.[66] According to Plaintiff, its AC vendor stated that regular maintenance of the air conditioning units

---

[59] *Id.* at 21.

[60] *Id.*

[61] Rec. Doc. 95 at 2.

[62] *Id.*

[63] *Id.* at 2–3.

[64] *Id.* at 3.

[65] *Id.* at 4.

[66] *Id.* at 5.

should have been done every six months and a deep clean of the units should have been done every two years.[67] Additionally, Plaintiff argues that Defendant's assertion that it was only required to perform repairs is contrary to the express terms of the leases, which required Defendant to "perform repairs necessary to maintain and keep the Premises and all components of it in good working order."[68] Because Defendant breached its legal and contractual obligations, Plaintiff argues that it was entitled to dissolve the lease.[69]

**B.    *Plaintiff's Motion to Strike***

    **1.    Plaintiff's Arguments in Support of the Motion**

Plaintiff moves the Court to strike the affidavit of Joshua Bruno.[70] According to Plaintiff, that affidavit violates the sham affidavit rule, because it attempts to manufacture disputes of fact merely to defeat summary judgment and contradicts Mr. Bruno's prior deposition testimony.[71] Alternatively, even if the Court does not strike the affidavit on that basis, Plaintiff contends that the affidavit contains is not based on personal knowledge, contains inadmissible hearsay and contains improper expert testimony.[72]

    **2.    Defendant's Arguments in Opposition to the Motion to Strike**

In opposition, Defendant argues that Bruno's affidavit is not a sham affidavit because it was not used to correct prior deposition testimony, but it was submitted because the final

---

[67] *Id.* at 6.

[68] *Id.*

[69] *Id.* at 8.

[70] Rec. Doc. 80 at 1.

[71] Rec. Doc. 80-1 at 2–6.

[72] *Id.* at 6–9.

transcript was not yet available.[73] According to Defendant, Mr. Bruno's affidavit is fully supported by both the draft and the final deposition transcripts.[74] To the extent Mr. Bruno's affidavit includes facts beyond what was stated in his 30(b)(6) deposition, Defendant argues Mr. Bruno is entitled to testify to those facts based on his personal knowledge, experience, and perception.[75]

### III. Legal Standard

**A.      *Legal Standard on a Motion for Summary Judgment***

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[76] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[77] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[78] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists, and the moving party is entitled to judgment

---

[73] Rec. Doc. 100 at 1.

[74] *Id.* at 2.

[75] *Id.* at 1–2.

[76] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[77] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[78] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

as a matter of law.[79] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[80]

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[81] Thereafter, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[82] To withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts.[83] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[84] Rather, a factual dispute precludes a grant of summary judgment only if the evidence presented by the nonmovant is sufficient to permit a reasonable trier of fact to find for the nonmoving party.[85] Further, a court "resolve[s] factual controversies in favor of the nonmoving party, but only when there is an actual

---

[79] *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[80] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[81] *Celotex*, 477 U.S. at 323.

[82] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

[83] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1996)).

[84] *Little*, 37 F.3d at 1075.

[85] *Anderson*, 477 U.S. at 248.

controversy, that is, when both parties have submitted evidence of contradictory facts."[86] Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[87] Ultimately, summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."[88]

**B.    *Legal Standard on a Motion to Strike***

Pursuant to Federal Rule of Civil Procedure 56(c)(2), on a motion for summary judgment, a party "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."[89] After the 2010 amendments to Rule 56, "[t]here is no need to make a separate motion to strike" inadmissible evidence.[90] According to the comments following the revised rule:

> Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. The objection functions much as an objection at trial, adjusted to the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated . . . .[91]

The Fifth Circuit has held that it is therefore proper for motions to strike evidence, presented in support or in opposition to a motion for summary judgment, to be treated as objections to the evidence.[92] Accordingly, the Court converts the motion to strike into an objection and considers

---

[86] *Little*, 37 F.3d at 1075.

[87] Fed. R. Civ. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

[88] *Armstrong v. City of Dallas*, 997 F.2d 62 (5th Cir. 1993).

[89] Fed. R. Civ. P. 56(c)(2).

[90] Fed. R. Civ. P. 56(c)(2) advisory committee's notes to 2010 amendment.

[91] *Id.*

[92] *See Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 515 (5th Cir. 2012)

it as such.

## IV. Analysis

Plaintiff raises three issues in the motion for summary judgment. First, Plaintiff asserts that Defendant breached its warranty under Louisiana law that the apartment units were suitable for the purpose for which they were leased and free from vices or defects.[93] Second, Plaintiff argues that Defendant breached its contractual obligation to perform necessary maintenance and repairs.[94] Third, because Defendant breached its obligations and warranties, Plaintiff asserts it is also entitled to judgment as a matter of law on Count I of the Amended Complaint and Count I of Defendant's Amended Counterclaim.[95]

In opposition, Defendant argues that Plaintiff ignores the fact that it accepted the apartment units after inspection and agreed to maintain the units in the same condition in which they were delivered.[96] Additionally, Defendant asserts that Plaintiff was the cause of the alleged mold and leaking air condition units.[97] Defendant contends that it repeatedly informed Plaintiff that surface mold would accumulate or the air conditioners would leak if the air conditioning units were improperly used.[98]

Under Louisiana law, a lessor warrants that the leased premises are "suitable for the purpose for which [they were] leased and that [they were] free of vices or defects that prevent

---

(adopting a district court opinion treating a motion to strike an affidavit as an objection).

[93] Rec. Doc. 69-1 at 8.

[94] *Id.* at 10.

[95] *Id.*

[96] Rec. Doc. 76 at 12.

[97] *Id.* at 14.

[98] *Id.* at 15–17.

[their] use for that purpose."[99] The warranty under Louisiana law extends to "vices or defects that arise after the delivery of the thing and are not attributable to the fault of the lessee,"[100] and to "vices or defects that are not known to the lessor," so long as the lessee notifies the lessor.[101] Pursuant to the lease terms, Defendant also warranted in the leases that the apartment units were "in good condition."[102]

As discussed in the Order denying Defendant's motion for summary judgment, there are factual issues in dispute regarding whether the premises (and air conditioning units) were in good condition when Plaintiff took possession of the property. The leases obligated Defendant to "perform repairs necessary to maintain and keep the Premises and all components in good working order, suitable for residential use, including, without limitation, all electrical, mechanical, plumbing, fire/life safety, and other building systems of the Premises."[103] Therefore, Defendant was obligated to perform repairs necessary to maintain and keep the premises in good working order. Under the clear terms of the lease, Plaintiff was obligated "to keep [premises] in same condition during the term of this lease at his expense. . . ."[104]

Defendant argues that the mold damage to the apartment units occurred because Plaintiff misused the air conditioning units and failed to clean the filters. Plaintiff asserts that the mold damage occurred because Defendant failed to perform required maintenance to the air

---

[99] La. Civ. Code art. 2696.

[100] *Id.*

[101] La. Civ. Code art. 2697.

[102] Rec. Doc. 70-4.

[103] Rec. Doc. 70-5.

[104] Rec. Doc. 70-5.

conditioning units. In support, Plaintiff cites an email dated September 18, 2018, from Basil Lohaza of Lohaza Development, LLC, the air-conditioning repair service hired by Plaintiff. Mr. Lohaza stated that the air conditioning units had been "neglected for a long time [] caus[ing] mold [to] spread inside of the units."[105] Mr. Lohaza also stated that the mold buildup in the units would cause clogged drains and reduced efficiency—which would cause the units to work harder to reach a desirable temperature.[106] He recommended deep cleaning of the systems because regular maintenance would not suffice.[107] If regular maintenance with cleaning and sanitizing was done every 6 months, Mr. Lohaza recommended deep cleaning every 2 years.[108]

Under the clear terms of the leases, Defendant was obligated to perform maintenance to keep the apartment units (and all components) in good working order. The maintenance of the air conditioning units suggested by Mr. Lohaza appears to fall within this category. By contrast, Plaintiff was required to keep the units in the same condition in which they were delivered.[109] Defendant assert that the air conditioning units were in good working order when Plaintiff took possession of the apartment units. Defendant notes that Plaintiff accepted possession of the units in their current condition after inspecting the premises. However, Defendant also warranted that the premises were in good condition, and Louisiana law requires that a lessor warrant against "vices or defects that arise after the delivery of the thing and are not attributable to the fault of

---

[105] Rec. Doc. 75-18 at 1.

[106] *Id.*

[107] *Id.*

[108] *Id.*

[109] Rec. Doc. 70-5.

the lessee."[110] A genuine issue of material fact is in dispute regarding whether the premises (and air conditioning units) were in good condition when Plaintiff took possession of the apartment units. Accordingly, the Court denies Plaintiff's motion for summary judgment.

## V. Conclusion

Considering the foregoing reasons, the Court finds that there are genuine issues of material fact in dispute precluding summary judgment. The Court need not consider Mr. Bruno's affidavit in deciding the instant motion for summary judgment. Therefore, the Court denies the objections to Mr. Bruno's affidavit as moot.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's "Motion for Summary Judgment"[111] is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's "Motion to Strike Affidavit of Joshua L. Bruno"[112] is converted to objections to the affidavit and **DENIED AS MOOT.**

**NEW ORLEANS, LOUISIANA,** this __5th__ day of August, 2020.

_Nannette Jolivette Brown_
_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[110] *Id.*

[111] Rec. Doc. 69.

[112] Rec. Doc. 80.