UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SONDER USA, INC.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 18-13891** |
| **635 N. SCOTT, LLC** | **SECTION: "G"(5)** |

### ORDER AND REASONS

In this litigation, Plaintiff Sonder USA, Inc. ("Plaintiff") brings claims against Defendant 635 N. Scott, LLC ("Defendant") for allegedly failing to remedy maintenance issues in 635 Scott's apartments.[1] Before the Court is Defendant's "Motion for Summary Judgment."[2] Oral argument was held on the motion via video conference on July 29, 2020.[3] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion.

### I. Background

On December 10, 2018, Plaintiff filed a Petition for Declaratory Judgment in the Civil District Court for the Parish of Orleans.[4] In the Petition, Plaintiff alleges that it leased 26 apartments from Defendant to start a short-term rental business.[5] Plaintiff alleges that Defendant was responsible for each apartment's maintenance and failed to address mold, leaking air

---

[1] Rec. Doc. 1-2; Rec. Doc. 32.

[2] Rec. Doc. 70.

[3] Rec. Doc. 91.

[4] Rec. Doc. 1-2 at 1.

[5] *See id.*

1

conditioning units, and other defects in the apartments.[6] As a result, Plaintiff seeks termination of the 26 lease agreements.[7]

On December 17, 2018, Defendant removed the case to this Court.[8] On January 17, 2019, Defendant filed an Answer and brought counterclaims against Plaintiff for breach of contract and violation of the Louisiana Unfair Trade Practices and Consumer Protection Law.[9]

On May 30, 2019, Plaintiff filed a First Amended and Restated Complaint for Declaratory Judgment and Damages.[10] In the amended complaint, Plaintiff brings the following claims: (1) a claim for declaratory judgment that Defendant was in default of the leases and that the leases are terminated; (2) a claim for breach of warranty; (3) a claim for breach of contract; and (4) a claim for lost profits.[11]

On September 30, 2019, Defendant filed a First Amended and Restated Counterclaim.[12] In the First Amended and Restated Counterclaim, Defendant brings claims for breach of contract and violation of the Louisiana Unfair Trade Practices and Consumer Protection Law.[13] Defendant contends that Plaintiff breached the 26 lease agreements by failing "to pay rent on any of the 26 apartments since September of 2018."[14] Defendant also contends that Plaintiff violated the

---

[6] *Id.* at 2.

[7] *Id.* at 3.

[8] Rec. Doc. 1.

[9] Rec. Doc. 10 at 8–9.

[10] Rec. Doc. 32.

[11] *Id.*

[12] Rec. Doc. 48.

[13] *Id.*

[14] *Id.* at 8.

Louisiana Unfair Trade Practices and Consumer Protection Law because Plaintiff "sought to manufacture grounds" to terminate the 26 lease agreements when it hired an unlicensed home inspection company to inspect mold contamination and prepare a report.[15]

On June 30, 2020, Defendant filed the instant motion for summary judgment.[16] On July 7, 2020, Plaintiff filed an opposition to the motion.[17] On July 17, 2020, with leave of Court, Defendant filed a reply brief in further support of the motion.[18] The Court heard oral arguments on the motion via video conference on July 29, 2020.[19]

## II. Parties' Arguments

### A.   *Defendant's Arguments in Support of the Motion for Summary Judgment*

Defendant raises two issues in the instant motion. First, Defendant asserts that under the terms of the leases it was Plaintiff's obligation to clean the air conditioning units.[20] Second, Defendant argues that Plaintiff was not entitled to cancel the leases.[21]

Addressing the first issue, Defendant argues that the mold damage to the apartment units occurred because Plaintiff misused the air conditioning units.[22] According to Defendant, under the terms of the leases, Plaintiff was responsible for keeping the units "in the same condition

---

[15] *Id.* at 11.

[16] Rec. Doc. 70.

[17] Rec. Doc. 75.

[18] Rec. Doc. 96.

[19] Rec. Doc. 91.

[20] Rec. Doc. 70-2 at 10.

[21] *Id.* at 12.

[22] *Id.*

3

during the term of this lease at his expense."[23] Defendant asserts that it was only required to "perform repairs necessary to maintain and keep the Premises and all components in good working order, suitable for residential use, including, without limitation, all electrical, mechanical, plumbing, fire/life safety, and other building systems of the Premises."[24] According to Defendant, even disagreement over the general definition of "repair" would render Plaintiff's breach of contract claim meritless, as "repair" is generally defined as "to restore by replacing a part or putting together what is torn or broken."[25] Thus, Defendant argues that under this generally prevailing meaning, Defendant's obligation to perform "repairs" does not include the obligation to routinely clean the air conditioning filters or to set the thermostat at appropriate temperatures in the units in Sonder's possession.[26] Accordingly, Defendant asserts any damages to the apartment units that resulted from Plaintiff's misuse of the air conditioning units is attributable to Plaintiff's failure to meet its own obligations under the lease.[27] Furthermore, Defendant argues that any ambiguities in the leases must be construed against Plaintiff because Plaintiff drafted the initial proposed lease.[28]

Next, Defendant contends that Plaintiff is not entitled to lease cancellation.[29] Defendant asserts that dissolution of a lease should not be granted under Louisiana law unless the party

---

[23] *Id.* at 11.

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.* at 12.

4

seeking cancellation is "undoubtedly entitled to such a cancellation."[30] Defendant asserts that Plaintiff sought to terminate the leases because the units were allegedly "uninhabitable" due to mold.[31] However, Defendant contends that the All American Reports, upon which Plaintiff based the termination, were inconclusive or did not detect the presence of mold in 16 of the units tested.[32] Defendant concedes that high mold scores were reported in nine of the units, but Defendant contends that the All American Reports did not determine that those nine units were uninhabitable.[33] Additionally, Defendant argues that the evidence suggests that the mold was caused by "HVAC condensation issues" resulting from failing to clean the air conditioning filters.[34] Therefore, Defendant argues that Plaintiff had no basis to unilaterally terminate the leases in November 2018.[35]

Finally, Defendant asserts that Plaintiff did not provide Defendant with an adequate opportunity to perform under the lease.[36] According to Defendant, the All American Reports recommended that a state licensed, mold remediation contractor be hired to assess the potential mold.[37] Defendant asserts that it hired a contractor, as recommended, who found that the units

---

[30] *Id.* (citing *Dore Energy Corp. v. Prospective Inv. & Trading Co. Ltd.*, 570 F.3d 219, 229–30 (5th Cir. 2009)).

[31] *Id.*

[32] *Id.* at 12–13.

[33] *Id.* at 13.

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Id.* at 14.

were habitable and no mold remediation was necessary other than wiping down surface molds.[38] Accordingly, Defendant asserts that Plaintiff's claims for declaratory relief and damages should be dismissed.[39]

B.  ***Plaintiff's Arguments in opposition to the Motion for Summary Judgment***

In opposition, Plaintiff argues that the mold and water intrusion issues existed before Plaintiff took possession of any of the units.[40] According to Plaintiff, it is undisputed that both Defendant's mold expert and Plaintiff's mold expert identified mold in the building after taking air samples, including areas with high levels of mold.[41]

Plaintiff cites deposition testimony of Josh Bruno, Defendant's corporate representative, who testified that a tenant in Unit 22 tenant complained of a leaking wall and a recurring mold problem on her bathroom ceiling as she was vacating the Unit in April of 2018.[42] Additionally, Plaintiff notes that Mr. Bruno acknowledged that a tenant in Unit 18 repeatedly complained of a leaking air conditioning unit, a tenant in Unit 23 complained of problems with the air conditioning unit and spots on the ceiling, and a tenant in Unit 19 complained of flooding from the air conditioning unit in June 2018.[43] Additionally, Plaintiff asserts that Defendant disregarded Plaintiff's complaints of mold in the building when Plaintiff presented punch-list items prior to taking possession.[44] Despite these ongoing complaints, Plaintiffs note that Defendant has not

---

[38] *Id.*

[39] *Id.*

[40] Rec. Doc. 75 at 1.

[41] *Id.* at 2.

[42] *Id.*

[43] *Id.* at 3.

[44] *Id.*

produced any evidence that mold remediation work was performed at any point.[45]

According to Plaintiff, Defendant attempts to downplay the findings of the All American Testing report by stating that the report noted that only 9 units had a "high likelihood of mold growth in the area tested at the time of the inspection."[46] In fact, Plaintiff asserts that 17 of the 26 Units had mold issues that needed to be addressed.[47] Additionally, Plaintiff points out that the All American Testing report states that there was a moderate range of mold in 8 additional units and that the "results are inconclusive, and suggests that a more detailed inspection by a trained professional may make sense if there are any other reasons to believe that mold growth could be a problem in [those units]."[48] Plaintiff asserts that when it provided the All American Testing reports to Defendant on October 19, 2018, Defendant continued in its usual behavior of disregarding any existence of mold based purely upon its own desire to avoid the expense of remediation.[49]

Plaintiff contends that it was not obligated to deep clean the air conditioning units.[50] According to Plaintiff, its AC vendor stated that regular maintenance of the air conditioning units should have been done every six months and a deep clean of the units should have been done every two years.[51] Additionally, Plaintiff argues that Defendant's assertion that it was only required to perform repairs is contrary to the express terms of the leases, which required

---

[45] *Id.* at 8.

[46] *Id.* at 12.

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *Id.* at 14.

[51] *Id.*

Defendant to "perform repairs necessary to maintain and keep the Premises and all components of it in good working order."[52] Regardless of the lease language regarding repairs and maintenance, Plaintiff contends Defendant was never relieved of its obligation to deliver the property to Sonder in good condition, which Plaintiff asserts Defendant failed to do.[53]

Finally, Plaintiff argues that it was legally entitled to terminate the leases.[54] Plaintiff asserts that Defendant waited until after Plaintiff terminated the leases on November 7, 2018—19 days after Plaintiff requested that Defendant hire a mold remediation company—to hire a mold expert to inspect the property.[55] Furthermore, Plaintiff asserts that Defendant's failure to deliver the property in good condition warranted dissolution and was permissible under well-established Louisiana law.[56] Therefore, Plaintiff asserts that Defendant has not demonstrated that there is no genuine issue of material fact as to any of its claims or defenses.[57]

## C.    *Defendant's Arguments in Further Support of the Motion for Summary Judgment*

In reply, Defendant argues that Plaintiff failed to cite key portions of Mr. Bruno's deposition testimony, which Defendant asserts show that all repairs were made to the property.[58] Defendant points out that Plaintiff acknowledged in the leases that it was "provided the opportunity to inspect the Premises and accepts it in its current condition."[59] Defendant asserts

---

[52] *Id.* at 15.

[53] *Id.* at 16.

[54] *Id.*

[55] *Id.* at 17.

[56] *Id.*

[57] *Id.*

[58] Rec. Doc. 96 at 1–2.

[59] *Id.* at 3.

that Plaintiff has waived any argument based on the existence of any alleged defect in the HVAC systems, which Defendant argues were undisputedly installed correctly and working as intended, both prior to commencement of the leases and at the time of Plaintiff's attempted termination.[60]

Defendant asserts that it investigated each and every complaint of alleged "mold" by previous tenants and by Plaintiff, and if mold or standing water was found, Defendant had a specific protocol for repair.[61] Defendant argues that the leases obligate it to perform "necessary repairs" on the building, while Plaintiff was obligated to clean and maintain each unit "in the same condition during the term" of the Leases.[62]

Finally, Defendant contends that Plaintiff was not entitled to cancellation of all 26 individual leases.[63] Defendant asserts that the HVAC technician's report confirms that if Plaintiff had regularly washed the filters and operated the units at the appropriate temperature the leaks and mold would have been avoided and a "deep clean" by Defendant would not have been necessary.[64] According to Defendant, Plaintiff was required to show that Defendant failed or refused to comply with its obligations and that Plaintiff had been seriously disturbed in his possession of all 26 individual leases as a consequence, or that all the units were no longer suitable for the purpose for which leased.[65]

---

[60] *Id.*

[61] *Id.* at 4.

[62] *Id.* at 5.

[63] *Id.* at 7.

[64] *Id.*

[65] *Id.* at 8.

### III. Legal Standard

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[66] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[67] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[68] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law.[69] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[70]

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[71] Thereafter, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence

---

[66] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[67] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[68] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[69] *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[70] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[71] *Celotex*, 477 U.S. at 323.

supports his claims.[72] To withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts.[73] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[74] Rather, a factual dispute precludes a grant of summary judgment only if the evidence presented by the nonmovant is sufficient to permit a reasonable trier of fact to find for the nonmoving party.[75] Further, a court "resolve[s] factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[76] Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[77] Ultimately, summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."[78]

---

[72] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

[73] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1996)).

[74] *Little*, 37 F.3d at 1075.

[75] *Anderson*, 477 U.S. at 248.

[76] *Little*, 37 F.3d at 1075.

[77] Fed. R. Civ. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

[78] *Armstrong v. City of Dallas*, 997 F.2d 62 (5th Cir. 1993).

## IV. Analysis

Defendant raises two issues in the instant motion. First, Defendant asserts that under the terms of the leases it was Plaintiff's obligation to clean the air conditioning units.[79] Second, Defendant argues that Plaintiff was not entitled to cancel the leases.[80] The Court addresses each of these issues in turn.

### A.    *Obligation to Clean the Air Conditioning Units*

Defendant argues that the mold damage to the apartment units occurred because Plaintiff misused the air conditioning units.[81] According to Defendant, under the terms of the leases, Plaintiff was responsible for keeping the units "in the same condition during the term of this lease at his expense."[82] In opposition, Plaintiff contends that it was not obligated to deep clean the air conditioning units.[83] According to Plaintiff, its AC vendor stated that regular maintenance of the air conditioning units should have been done every six months and a deep clean of the units should have been done every two years.[84] Additionally, Plaintiff argues that Defendant's assertion that it was only required to perform repairs is contrary to the express terms of the leases, which required Defendant to "perform repairs necessary to maintain and keep the Premises and all components of it in good working order."[85]

---

[79] Rec. Doc. 70-2 at 10.

[80] *Id.* at 12.

[81] *Id.*

[82] *Id.* at 11.

[83] Rec. Doc. 75 at 14.

[84] *Id.*

[85] *Id.* at 15.

Pursuant to Louisiana Civil Code article 2047, "[i]nterpretation of a contract is the determination of the common intent of the parties."[86] "The language of the policy is the starting point for determining that common intent."[87] "The words of a contract must be given their generally prevailing meaning."[88] "Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract."[89] "Where a contract is unambiguous, the interpretation of the contract becomes a matter of law."[90] When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.[91] "A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties."[92]

Paragraph 15 of each of the leases provides:

> **15. REPAIR AND MAINTENANCE.** Lessor shall pay all expenses, costs, and amounts of every kind or nature that Lessor incurs because of or in connection with the ownership, operation, management, maintenance, or repair of the Premises, and shall perform repairs necessary to maintain and keep the Premises and all components of it in good working order, suitable for residential use, including, without limitation, all electrical, mechanical, plumbing, fire/life safety, and other building systems of the Premises. Lessee, at Lessee's expense, shall immediately repair all damage to the Premises caused by Lessee or by Lessee's agents, employees, invitees or customers or damage that, due to the anticipated short term rentals, exceeds the wear and tear attributable to normal single-tenant

---

[86] LA. CIV. CODE ANN. art. 2045.

[87] *Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 954 (5th Cir. 2009).

[88] LA. CIV. CODE ANN. art. 2047.

[89] LA. CIV. CODE ANN. art. 2048.

[90] *Andretti Sports Mktg. La., LLC v. Nola Motorsports Host Comm., Inc.*, 147 F. Supp. 3d 537, 552 (E.D. La. 2015) (Brown, J.) (citing *Strachan Shipping Co. v. Dresser Indus., Inc.*, 701 F.2d 483, 486 (5th Cir. 1983)).

[91] LA. CIV. CODE ANN. art. 2046.

[92] LA. CIV. CODE ANN. art. 2053.

residential apartment use. If a maintenance issue for which Lessor is responsible arises, Lessee shall contact the Lessor promptly and the Lessor shall promptly provide such maintenance. In the event an urgent (or potentially urgent) maintenance issue arises, Lessee may carry out such maintenance, using Lessor's preferred contractor or employee, if any, and deduct all reasonably incurred expenses from the next rent payment coming due, provided that (a.) The repairs were necessary, (b.) Lessor failed to act within a reasonable time after being notified and (c.) the price paid was reasonable.[93]

Paragraph 24 of each of the leases provides:

**24. WARRANTY.** Lessor warrants that the Premises are in good condition, unless otherwise noted. Lessee acknowledges that he has been provided the opportunity to inspect the Premises and accepts it in its current condition and agrees to keep it in same condition during the term of this lease at his expense and return it to Lessor in the same or better condition at termination of this lease, normal decay, wear and tear excepted.[94]

Defendant contends that under the clear terms of the lease Plaintiff was required to routinely clean the air conditioning filters and ensure that the thermostats were set to appropriate temperatures.[95] Defendant argues that the mold resulted from Plaintiff's misuse of the air conditioning units.[96] In response, Plaintiff asserts that it was not obligated to deep clean the air conditioning units.[97]

The leases obligated Defendant to "perform repairs necessary to maintain and keep the Premises and all components in good working order, suitable for residential use, including, without limitation, all electrical, mechanical, plumbing, fire/life safety, and other building

---

[93] Rec. Doc. 70-4.

[94] *Id.*

[95] Rec. Doc. 70-2 at 11.

[96] *Id.*

[97] Rec. Doc. 75 at 14.

systems of the Premises."[98] The term "repair" is generally defined as "to restore by replacing a part or putting together what is torn or broken."[99] The term "maintain" is generally defined as "to keep in an existing state (as of repair, efficiency, or validity) : preserve from failure or decline."[100] Defendant was obligated to perform repairs necessary to maintain and keep the premises in good working order. Under the clear terms of the lease, Plaintiff was obligated "to keep [the premises] in same condition during the term of this lease at his expense. . . ."[101]

Defendant argues that the mold damage to the apartment units occurred because Plaintiff misused the air conditioning units and failed to clean the filters.[102] Plaintiff asserts that the mold damage occurred because Defendant failed to perform required maintenance to the air conditioning units.[103] In support, Plaintiff cites an email dated September 18, 2018, from Basil Lohaza of Lohaza Development, LLC, the air-conditioning repair service hired by Plaintiff. Mr. Lohaza stated that the air conditioning units had been "neglected for a long time [] caus[ing] mold spread inside of the units."[104] Mr. Lohaza also stated that the mold buildup in the units would cause clogged drains and reduced efficiency causing the units to work harder to reach a desirable temperature.[105] He recommended deep cleaning of the systems because regular maintenance

---

[98] Rec. Doc. 70-5.

[99] Merriam-Webster, https://www.merriam-webster.com/dictionary/repair, last accessed July 27, 2020.

[100] Merriam-Webster, https://www.merriam-webster.com/dictionary/maintain, last accessed July 27, 2020.

[101] Rec. Doc. 70-5.

[102] *Id.*

[103] Rec. Doc. 75 at 15.

[104] Rec. Doc. 75-18 at 1.

[105] *Id.*

would not suffice.[106] If routine maintenance with cleaning and sanitizing was done every 6 months, Mr. Lohaza recommended deep cleaning every 2 years.[107]

Under the clear terms of the leases, Defendant was obligated to perform maintenance to keep the apartment units (and all components) in good working order. The maintenance of the air conditioning units suggested by Mr. Lohaza appears to fall within this category. By contrast, Plaintiff was required to keep the units in the same condition in which they were delivered.[108] Defendant assert that the air conditioning units were in good working order when Plaintiff took possession of the apartment units. Defendant notes that Plaintiff accepted possession of the units in their current condition after inspecting the premises. However, Defendant also warranted that the premises were in good condition. A genuine issue of material fact is in dispute regarding whether the premises (and air conditioning units) were in good condition when Plaintiff took possession of the apartment units. Accordingly, Defendant has not demonstrated that it is entitled to summary judgment on this issue.

### B. *Lease Cancellation*

Defendant argues that Plaintiff had no basis to unilaterally terminate the leases because the apartment units were not "uninhabitable" as a result of mold contamination.[109] Plaintiff asserts that Defendant's failure to deliver the property in good condition warranted dissolution and was permissible under well-established Louisiana law.[110]

---

[106] *Id.*

[107] *Id.*

[108] Rec. Doc. 70-5.

[109] Rec. Doc. 70-2 at 12–13.

[110] Rec. Doc. 75 at 17.

Lease cancellation is not favored under Louisiana law.[111] A "lease will be dissolved only when it has been shown that the lessor is undoubtedly entitled to such a cancellation."[112] This is because, under Louisiana law, "specific performance is the preferred remedy for breach of contract."[113]

Yet a failure to deliver the property in good condition has been recognized as a sufficient reason to dissolve a lease under Louisiana law.[114] As discussed above, a genuine issue of material fact is in dispute regarding whether the premises (and air conditioning units) were in good condition when Plaintiff took possession of the apartment units. Accordingly, Defendant has not demonstrated that it is entitled to summary judgment on this issue.

---

[111] *Dore Energy Corp. v. Prospective Inv. & Trading Co. Ltd*., 570 F.3d 219, 229–30 (5th Cir. 2009) (citing *Atkinson v. Richeson*, 393 So.2d 801, 803 (La. Ct. App. 1981)).

[112] *Id.*

[113] J. *Weingarten, Inc. v. Northgate Mall, Inc*., 404 So.2d 896, 897 (La.1981); see also Bourgeois v. Dunn, 822 So.2d 708, 711 (La. Ct. App. 2002).

[114] *See Dehan v. Youree*, 161 La. 806, 814–15, 109 So. 498, 501 (1926) ("The right to have the lease dissolved does not depend upon the degree of inconvenience to which the lessee is put. If the thing leased does not fulfill its object in consequence of some inherent defect, the action ex conducto will lie, although the inconvenience resulting from the defect may be too light to authorize a claim for damages.'"); *Senac v. Pritchard*, 5 La. 480, 482 (1833) ("The entry on premises under a contract of lease, and the remaining in possession under a promise that they shall be put in repair, does not prevent the lessee from avoiding the lease when he finds these repairs will not be made.").

## V. Conclusion

Considering the foregoing reasons, the Court finds that there are genuine issues of material fact in dispute precluding summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's "Motion for Summary Judgment"[115] is **DENIED.**

**NEW ORLEANS, LOUISIANA,** this __5th__ day of August, 2020.

                              **NANNETTE JOLIVETTE BROWN**
                              **CHIEF JUDGE**
                              **UNITED STATES DISTRICT COURT**

---

[115] Rec. Doc. 70.