## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

SONDER USA, INC.                                    CIVIL ACTION

VERSUS                                              NO. 18-13891

635 N. SCOTT ST., LLC                              SECTION: "G"

### ORDER AND REASONS

In this litigation, Plaintiff Sonder USA, Inc. ("Plaintiff") brought claims against Defendant 635 N. Scott St., LLC ("Defendant") for failing to remedy maintenance issues in Defendant's apartments in violation of certain lease agreements.[1] Defendant asserted counterclaims against Plaintiff for breach of contract and a violation of the Louisiana Unfair Trade Practices Act.[2] On March 10, 2022, a jury found for Plaintiff, and the Court entered judgment on the verdict.[3] Before the Court is Defendant's "Renewed Motion for Judgment as a Matter of Law, or, Alternatively, New Trial."[4] Plaintiff opposes the motion.[5] For the reasons explained below, the Court finds that Defendant is not entitled to renewed judgment as a matter of law because the jury instructions were consistent with Louisiana law and the jury's verdict is supportable by a reasonable interpretation of the evidence. Additionally, the Court finds that Defendant is not entitled to a new trial because Defendant has not shown manifest injustice. Therefore, considering the motion, the

---

[1] Rec. Doc. 1-2; Rec. Doc. 32.

[2] Rec. Doc. 48. Although Defendant is also a Counter-Plaintiff, for clarity, the Court will refer to 635 N. Scott St., LLC as "Defendant" throughout this Order.

[3] Rec. Docs. 216, 219.

[4] Rec. Doc. 226.

[5] Rec. Doc. 248.

1

memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion.

## I. Background

On March 7, 2022, this matter proceeded to trial before a jury.[6] The trial lasted for four days.[7] After retiring to deliberate, the jury returned a verdict in favor of Plaintiff on March 10, 2022.[8] Specifically, the jury found that Plaintiff was entitled to terminate twenty-five of the twenty-six leases and awarded Plaintiff $222,489.00 in damages.[9] As to Defendant's counterclaim, the jury further found that Plaintiff did not wrongfully abandon the remaining lease and that Plaintiff did not engage in an unfair trade practice.[10] The Court then entered judgment on the verdict, awarding Plaintiff $222,489.00 in damages.[11]

On April 7, 2022, Defendant filed the instant motion for judgment as a matter of law or new trial.[12] Plaintiff filed its opposition on April 26, 2022.[13] On May 3, 2022, with leave of Court, Defendant filed a reply in further support of the motion.[14]

---

[6] Rec. Doc. 211.

[7] Rec. Docs. 211, 212, 213, 214.

[8] Rec. Doc. 216.

[9] Id.

[10] Id.

[11] Rec. Doc. 219.

[12] Rec. Doc. 226.

[13] Rec. Doc. 236.

[14] Rec. Docs. 249, 250, 251.

## II. Parties' Arguments

### A.      *Defendant's Arguments in Support of the Motion*

Defendant moves the Court to enter judgment as a matter of law in its favor on all of Plaintiff's claims and on its counterclaim.[15] Defendant advances different arguments for each claim. First, Defendant argues that it is entitled to judgment as a matter of law on Plaintiff's claim for cancellation of the leases.[16] Defendant contends that Jury Charge Number 23 was inconsistent with Louisiana law, leading the jury to render a verdict unsupported by the evidence.[17] Defendant asserts that "a mere breach" of the lease by the landlord does not entitle the tenant to cancel the lease—instead, Defendant submits that the tenant must prove that the property was substantially impaired, as reflected in Jury Charge Number 31.[18] Defendant acknowledges that it did not object to Jury Charge Number 23 during the charge conference.[19] However, Defendant contends that its objection "was properly preserved" because Defendant "addressed this issue at length in the pretrial order."[20] Even if Defendant's objection was waived, Defendant asserts that it is entitled to plain error review.[21] Defendant argues that "a party seeking cancellation of a lease has the burden of proving it is 'undoubtedly entitled to such a cancellation.'"[22] Defendant contends that defects that require "evacuation through condemnation" or "structural reconstruction" entitle a party to

---

[15] Rec. Doc. 226-1 at 3.

[16] *Id.* at 4.

[17] *Id.*

[18] *Id.* at 5–6.

[19] *Id.* at 5.

[20] *Id.*

[21] *Id.*

[22] *Id.* at 7 (quoting *Doré Energy Corp. v. Prospective Inv. & Trading Co.*, 570 F.3d 219, 229 (5th Cir. 2009)).

cancel a lease, but defects "where it is feasible for the lessee to continue his occupancy" do not.[23]

Defendant submits that this alleged misstatement of law was "compounded" by the verdict form, which instructed the jury to stop its deliberations if it found in favor of Plaintiff on its breach of contract claims.[24] Specifically, the verdict form instructed the jury to stop deliberations if it found in favor of Plaintiff and had answered the damages question.[25] Defendant notes that the Court properly instructed the jury to complete the form and answer the remaining questions about Defendant's counterclaim.[26] However, because the jury returned just five minutes later, finding in favor of Plaintiff on Defendant's counterclaim, Defendant argues "[t]he jury was obviously confused."[27] Defendant asserts that the jury "failed to even consider" its counterclaim once it determined that Defendant had breached the leases, including by failing to award Defendant damages on Unit 18, which the jury found Plaintiff was not entitled to cancel.[28] Defendant contends this resulted in a jury verdict "wholly unsupported by the evidence."[29]

Specifically, Defendant argues that Plaintiff did not meet its burden to show substantial impairment.[30] Defendant asserts that Plaintiff was required to show it was entitled to cancel each individual lease.[31] Defendant avers that Plaintiff "did not meet this burden on any" of the twenty-

---

[23] *Id.* (citing *Brunies v. Police Jury of Jefferson Par.*, 110 So. 2d 732, 737 (La. 1959)).

[24] *Id.* at 9.

[25] *Id. See also* Rec. Doc. 216.

[26] Rec. Doc. 226-1 at 9.

[27] *Id.* at 10.

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

six units, and that the jury unreasonably found that Plaintiff was entitled to cancel twenty-five of the leases.[32] Defendant asserts that Plaintiff's use of the units was not substantially impaired because Plaintiff "continued to rent each unit out at a profit," and because Plaintiff did not prove that any of the units had defects or mold.[33] Defendant further asserts that Plaintiff did not prove that Defendant failed to make necessary repairs, or that there was a pre-existing defect in the units.[34]

Second, Defendant argues that it is entitled to judgment as a matter of law on Plaintiff's breach of contract and breach of warranty claims.[35] Defendant asserts that Plaintiff did not provide any evidence of a defect that Defendant refused to or failed to repair.[36] Finally, Defendant argues that it is entitled to judgment as a matter of law on its breach of contract counterclaim.[37] Defendant contends that Plaintiff "was not justified in its abandonment of the units" and is in breach of the leases.[38] Defendant asserts that Plaintiff inspected and accepted the units, and was under an obligation to return them in the same or better condition at the end of the lease.[39] Defendant asserts that Plaintiff "unjustifiably abandoned the units and left the premises to deteriorate."[40] Defendant moves the Court to enter judgment in its favor and award it accelerated rent in the amount of

---

[32] *Id.* at 11.

[33] *Id.* at 11–16 (discussing sufficiency of evidence of defects in various units).

[34] *Id.* at 17–19.

[35] *Id.* at 19.

[36] *Id.*

[37] *Id.* at 20.

[38] *Id.*

[39] *Id.*

[40] *Id.*

$2,583,262.80.[41]

Defendant also moves the Court to order a new trial.[42] Defendant argues that if the Court grants its motion for judgment as a matter of law, it "is still entitled to a new trial on its Louisiana Unfair Trade Practices Act" claim.[43] Defendant re-asserts that the allegedly incorrect jury instruction and the verdict form "resulted in the jury stopping its deliberations once it determined that [Defendant] had breached the leases."[44] Defendant contends that this "mean[s] the jury did not even consider . . . [Defendant]'s unfair trade practices claim."[45]

Alternately, Defendant moves the Court for a new trial on all issues.[46] Defendant argues the Court must order a new trial "to prevent manifest injustice."[47] Defendant avers that "[i]t is without question that the jury was confused by the erroneous jury instruction and verdict form."[48] Defendant asserts there is insufficient evidence that it breached all twenty-six leases and that Plaintiff's use was substantially impaired.[49] Moreover, Defendant argues that the "Court should grant a new trial to address several erroneous and prejudicial evidentiary rulings."[50] Defendant asserts that the Court erroneously admitted: (1) emails from Basil Lohaza which stated that there

---

[41] *Id.*

[42] *Id.*

[43] *Id.* at 21.

[44] *Id.*

[45] *Id.* at 21–22.

[46] *Id.* at 22.

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *Id.*

was mold in the units and included photographs of the air conditioning units, and (2) a "scientific report" by Dan Paradela.[51] Defendant argues these emails contained "hearsay within hearsay" and were inadmissible.[52] Defendant contends the Court "confused" the jury by instructing it that the emails were not being introduced for their truth and, the next day, that the jury did not have to accept that what the email stated was true.[53] As to the Paradela report, Defendant objects that the Court admitted it as a business record but "did not give explicit instructions to the jury regarding how they should weigh this out-of-court scientific evidence."[54] Defendant argues "[t]hese erroneous and confusing evidentiary rulings were extremely prejudicial."[55] Therefore, Defendant seeks a new trial on all issues.[56]

### B.   Plaintiff's Arguments in Opposition to the Motion

In opposition, Plaintiff submits that Defendant is not entitled to judgment as a matter of law on any issue.[57] As to Plaintiff's claim for cancellation of the leases, Plaintiff makes three arguments. First, Plaintiff argues that Defendant waived its objection to Jury Charge Number 23.[58] Plaintiff asserts that, because Defendant's Rule 50 motions at trial only addressed Plaintiff's purported failure to show breach of the leases, Defendant waived any right to move for renewed

---

[51] Id. at 22–23.

[52] Id. at 23–24.

[53] Id. at 24.

[54] Id.

[55] Id.

[56] Id. at 25.

[57] Rec. Doc. 248 at 2.

[58] Id. at 3.

judgment as a matter of law on the jury charge and verdict form.[59] Additionally, Plaintiff asserts that Defendant both failed to object and "affirmatively stated its agreement" with the instructions and verdict form at the charge conference.[60] Plaintiff further argues that, in any event, the jury instructions and verdict form were proper. Plaintiff asserts that Defendant cannot satisfy the plain error standard because Jury Charge Number 23 is a correct statement of the contents of article 1993 of the Louisiana Civil Code.[61] Plaintiff argues that there is no plain error because, as Defendant itself notes, the "proper" instruction on dissolution was found in Jury Charge Number 31.[62] Similarly, Plaintiff contends that Defendant cannot show plain error concerning the verdict form because Defendant failed to contemporaneously object to the verdict form and because the Court corrected the error.[63]

Second, Plaintiff argues that it met its burden to cancel the leases.[64] Plaintiff contends that the evidence demonstrates its use of the units was substantially impaired.[65] Plaintiff points to Paradela's testimony—and his report's findings—of visible mold in most of the units, moisture concerns associated with possible roof leaks or HVAC issues, and defects in the installation of structural components of the units.[66] Plaintiff also points to evidence of Plaintiff's repeated reports of issues with the air conditioning units, and Defendant's refusal of responsibility for

---

[59] *Id.*

[60] *Id.* at 3–4 (emphasis omitted).

[61] *Id.* at 5–6.

[62] *Id.* at 6.

[63] *Id.*

[64] *Id.* at 7.

[65] *Id.*

[66] *Id.*

maintenance.[67] Plaintiff argues that its continued presence in the units is evidence that it gave Defendant ample opportunity to make the necessary repairs before ultimately terminating the leases.[68]

Plaintiff submits that it presented expert testimony that the mold was caused by Defendant and that the units were uninhabitable.[69] In particular, Plaintiff submits that its expert, William Feaheny, testified about the elevated moisture and humidity in the units.[70] Additionally, Plaintiff points to Paradela's testimony that he found visible mold, including aspergillus and penicillium, in the units.[71] Plaintiff asserts that Defendant's expert, Brent Driskill, agreed that these types of mold can cause negative health effects, including death.[72] Plaintiff contends that Defendant's argument that Paradela's report was not admitted for its truth is wrong for two reasons. First, Plaintiff asserts that Paradela's report was admitted during Plaintiff's corporate representative Stacy Dejan's testimony for the sole purpose of proving notice to Plaintiff.[73] Second, Plaintiff avers that Paradela testified at trial to his own conclusions, which were admitted for their truth.[74] Plaintiff also contends that Basil Lohaza's email and photographs support that the units were uninhabitable.[75] Plaintiff asserts that the proper standard for a Rule 50 motion is whether "*any*

---

[67] *Id.* at 8.

[68] *Id.* at 9.

[69] *Id.*

[70] *Id.*

[71] *Id.* at 10.

[72] *Id.*

[73] *Id.*

[74] *Id.*

[75] *Id.*

reasonable jury could reach the same verdict" based on the evidence and "inferences from the evidence."[76] Plaintiff submits that, even if Lohaza's email and photographs were not admitted for their truth, a reasonable jury could infer from Plaintiff's receipt of the reports "that there was mold in the air-conditioning units."[77]

Further, Plaintiff avers that the evidence established that Defendant refused to make repairs.[78] Plaintiff highlights Stacy Dejan's testimony that Defendant "was quick to respond verbally to requests for repairs," but that Defendant did not follow through.[79] Plaintiff points to several exhibits that it contends show that Defendant refused to address requests for repairs and would instead deflect or threaten.[80] Relatedly, Plaintiff contends it established the defects in the units predated their occupancy.[81] Plaintiff argues that the work order history, detailing complaints by tenants at the property, establishes that the defects pre-existed Plaintiff's occupancy.[82] Plaintiff asserts this exhibit was admitted as a business record without objection.[83] Plaintiff further asserts that Defendant's own notations in the work order history are admissible as non-hearsay party admissions and establish the truth of the defects reported.[84] Moreover, Plaintiff argues that the

---

[76] *Id.* at 10–11 (quoting *Long v. Faenas Transp., LLC*, No. 21-40268, 2021 WL 5119717, at *4–5 (5th Cir. Nov. 3, 2021)).

[77] *Id.* at 11.

[78] *Id.*

[79] *Id.*

[80] *Id.* at 11–12.

[81] *Id.* at 13.

[82] *Id.*

[83] *Id.* at 14.

[84] *Id.*

jury's verdict can be upheld even if it did not show a breach of the lessor's warranty under Louisiana law.[85] Plaintiff asserts that "[a] reasonable jury could have concluded that defects existed in the apartments before [Plaintiff]'s tenancy based on the evidence that leaks, 'discoloration,' and other issues were reported to [Defendant] by prior tenants."[86]

Third, Plaintiff argues that Defendant is not entitled to renewed judgment as a matter of law on its counterclaim because Defendant did not so move at trial.[87] Plaintiff further argues that Defendant points to no evidence to support judgment as a matter of law on its counterclaim, and therefore cannot meet its burden to show that the evidence "points so strongly and overwhelmingly" in its favor that no reasonably jury could reach a contrary conclusion.[88]

Regarding Defendant's motion for a new trial, Plaintiff argues Defendant is not entitled to a new trial on its Louisiana Unfair Trade Practices Act ("LUTPA") claim.[89] Plaintiff submits that Defendant's argument for a new trial on its LUTPA claim rests on Defendant's assertion that the jury instructions were erroneous and that the jury was "confused" by the verdict form.[90] Plaintiff reiterates its arguments from above that Defendant waived its objection to the instruction and that the instructions are in fact consistent with Louisiana law.[91] Plaintiff also argues that because Defendant "has no information as to what the jury considered in its nearly six hours of

---

[85] *Id.* at 14–15.

[86] *Id.* at 15.

[87] *Id.*

[88] *Id.* at 16 (quoting *Collins v. Benton*, No. 18-7465, 2022 WL 656199, at *7 (E.D. La. Mar. 4, 2022) (Brown, C.J.)).

[89] *Id.*

[90] *Id.* at 16–17.

[91] *Id.* at 17.

deliberations," Defendant's argument that the jury did not even consider its LUTPA claim "is wrong."[92]

Additionally, Plaintiff argues that Defendant is not entitled to a new trial on all issues.[93] Plaintiff asserts that Defendant "points to no new law or evidence" to support its entitlement to a new trial on all issues.[94] Plaintiff re-iterates its above arguments that there is substantial evidence to support the jury's verdict, and that neither the jury instructions nor the verdict form were erroneous.[95] Additionally, Plaintiff argues that the allegedly erroneous or prejudicial evidentiary rulings do not warrant a new trial.[96] Plaintiff asserts that Defendant's objection to the Lohaza photographs is not a hearsay objection—because photographs are non-assertive in nature—but is an authenticity objection that Defendant failed to raise at trial and is therefore waived.[97] Likewise, Plaintiff contends that the Paradela report was properly admitted as business records, and that the Court properly issued a limiting instruction to the jury.[98]

### C.   *Defendant's Arguments in Further Support of the Motion*

In reply, Defendant argues that it is entitled to judgment as a matter of law because Plaintiff failed to show substantial impairment in each unit.[99] Defendant asserts that Plaintiff's reliance on Paradela's report and testimony, Feahney's testimony, and Lohaza's photographs and emails is

---

[92] *Id.*

[93] *Id.*

[94] *Id.*

[95] *Id.* at 17–18.

[96] *Id.* at 18.

[97] *Id.*

[98] *Id.* at 18–19 (discussing *Brauninger v. Motes*, 260 Fed. App'x 634 (5th Cir. 2007)).

[99] Rec. Doc. 251 at 1–2.

insufficient to support the jury's verdict.[100] Defendant argues that Paradela was not offering expert testimony and therefore could not testify about the cause of the mold.[101] Additionally, Defendant asserts that Paradela's report found elevated levels of mold in only nine of the twenty-six units, which "cannot support" a verdict that the entire building was infested with mold.[102] Defendant contends that Feahney's testimony was "based entirely on conjecture and speculation" because he relied on Paradela's findings from months before Feahney tested the units.[103] And Defendant argues that Plaintiff's opposition demonstrates that Lohaza's photographs were "always intended to [be] rel[ied] on [for their] truth."[104] Defendant submits that Plaintiff's assertion that the jury was allowed to rely on this "purely speculative evidence" "is based on nothing but conjecture."[105] Furthermore, Defendant argues that Plaintiff cannot show substantial impairment because Plaintiff had all of the units cleaned and repaired prior to its alleged abandonment of the units.[106]

Next, Defendant re-iterates that Plaintiff was not substantially impaired in its use of the property because it "remained in possession of the units and continued to rent them out at a profit throughout 2018."[107] Defendant asserts that there is no evidence in the record that Plaintiff complained about any of the issues with the units during 2018.[108] Defendant contends that its

---

[100] *Id.* at 2–3.

[101] *Id.* at 3.

[102] *Id.*

[103] *Id.* at 4.

[104] *Id.* at 5 (emphasis omitted).

[105] *Id.* (emphasis omitted).

[106] *Id.* (citing *Gray v. Kanavel*, 508 So. 2d 970, 972 (La. App. 4 Cir. 1987)).

[107] *Id.* at 6 (emphasis omitted).

[108] *Id.*

expert, Driskill, provided the only testimony about the condition of the units in November of 2018 and that this is the "only" opinion on which the jury could rely.[109]

Further, Defendant argues that it did not waive any of the arguments identified by Plaintiff.[110] First, Defendant asserts that it "necessarily" requested judgment as a matter of law on its counterclaim by moving for judgment as a matter of law that Plaintiff failed to meet its burden to cancel the leases.[111] Defendant argues that "if [Plaintiff] failed to prove it was entitled to cancellation of the leases, then [Plaintiff] wrongfully abandoned the leases."[112] Second, Defendant explains that it does not request judgment as a matter of law that the jury instructions and verdict form were plain error.[113] Instead, Defendant contends that, under the correct standard, no reasonable jury could have found that Plaintiff was substantially impaired in its use of the units.[114] Defendant notes that it alternatively requests a new trial on the grounds that the errors in the instructions and verdict form were so pervasive that they affected the jury's deliberations and deprived Defendant of a fair trial.[115] Defendant also asserts it would have been "impossible" to move for judgment as a matter of law on the instructions and verdict form because they had not been presented to the jury when Defendant made its Rule 50 motions.[116]

Defendant next addresses the Court's evidentiary rulings. As to the work order history,

---

[109] *Id.* at 6–7 (emphasis omitted).

[110] *Id.* at 7.

[111] *Id.*

[112] *Id.*

[113] *Id.*

[114] *Id.*

[115] *Id.*

[116] *Id.* at 8.

Defendant contends it was not offered for its truth.[117] Defendant asserts the Court properly issued a limiting instruction to the jury that the reports from prior tenants were not admitted for their truth.[118] Defendant re-iterates that the Paradela report and Lohaza emails are not business records and were inadmissible.[119] Defendant asserts that "it is 'not enough to say that as a general business matter, [the company] receive[s] and send[s] emails as part of their business model.'"[120] Defendant contends that admitting this evidence "was extremely prejudicial" and that without it, Plaintiff "wholly failed to prove its claims."[121]

Finally, Defendant argues that under the plain error standard it is entitled to a new trial.[122] Defendant "reiterate[s] its arguments" that Jury Charge Number 23 is inconsistent with the law of cancellation of leases.[123] Defendant contends that it was "plain and obvious" error to instruct the jury on both the rule of subsequent breaches and cancellation of leases because it rendered the jury instructions "internally inconsistent" and that "a rational verdict cannot be envisioned."[124]

### III. Legal Standard

#### A.   *Judgment as a Matter of Law Under Federal Rule of Civil Procedure 50(b)*

Federal Rule of Civil Procedure 50(a) governs motions for judgment as a matter of law.

---

[117] *Id.*

[118] *Id.*

[119] *Id.* at 12.

[120] *Id.* (quoting *Marine Power Holding, LLC v. Malibu Boats, LLC*, No. 14-912, 2016 WL 4218217, at *6 (E.D. La. Aug. 8, 2016) (Africk, J.)).

[121] *Id.* at 13.

[122] *Id.* at 8.

[123] *Id.* at 9.

[124] *Id.* at 10.

Under Rule 50(a)(1):

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on the issue, the court may:
>
> > (A) resolve the issue against the party; and
> > (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Motions under Rule 50(a)(1) may be renewed after trial pursuant to Rule 50(b), which states:

> If the court does not grant a motion as a matter of law under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the motion, the court may:
>
> > (1) allow judgment on the verdict, if the jury returned a verdict;
> > (2) order a new trial; or
> > (3) direct the entry of judgment as a matter of law.

The Fifth Circuit has emphasized that "the two basic purposes of this rule are to enable the trial court to re-examine the question of evidentiary sufficiency as a matter of law if the jury returns a verdict contrary to the movant, and to alert the opposing party to the insufficiency before the case is submitted to the jury."[125]

A motion pursuant to Rule 50(b) "in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict."[126] Therefore, under Rule 50(b), "judgment as a matter of law is proper after a party has been fully heard by the jury on a given

---

[125] *Scottish Heritable Tr., PLC v. Peat Marwick Main & Co.*, 81 F.3d 606, 610 (5th Cir. 1996) (internal citation and quotation marks omitted).

[126] *Flowers v. S. Reg'l Phys. Servs., Inc.*, 247 F.3d 229, 235 (5th Cir. 2001) (quoting *Ford v. Cimarron Ins. Co.*, 230 F.3d 828, 830 (5th Cir. 2000)).

issue, and there is no legally sufficient evidentiary basis for a reasonable jury to have found for

that party with respect to that issue."[127] In evaluating a Rule 50(b) motion, a court must "consider

all of the evidence, drawing all reasonable inferences and resolving all credibility determinations

in the light most favorable to the non-moving party."[128] Because all reasonable inferences and

credibility determinations should be resolved in favor of the non-movant in a Rule 50(b) motion,

"judgment as a matter of law should not be granted unless the facts and inferences point so strongly

and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary

conclusion."[129]

**B.     *New Trial Under Federal Rule of Civil Procedure 59***

Federal Rule of Civil Procedure 59 governs motions for a new trial brought within twenty-

eight days after the entry of judgment.[130] Rule 59(a) provides:

> The court may, on motion, grant a new trial on all or some of the issues—and to
> any party—as follows:
>> (A) after a jury trial, for any reason for which a new trial has heretofore been
>> granted in an action at law in federal court; or
>> (B) after a nonjury trial, for any reason for which a rehearing has heretofore
>> been granted in a suit in equity in federal court.

A renewed motion for judgment as a matter of law may be joined in the alternative with a motion

for new trial under Rule 59, but the motions have distinct functions and are governed by different

standards. "The trial court's power to grant a new trial [under Rule 59(a)] on the basis of the court's

firm belief that the verdict is clearly contrary to the weight of the evidence has . . . long been

---

[127] *Id.* (internal citation and quotation marks omitted).

[128] *Id.* (internal citation and quotation marks omitted).

[129] *Id.* (internal citation and quotation marks omitted).

[130] Fed. R. Civ. P. 59.

regarded as an integral part of trial by jury."[131] "In making this determination, the district court weighs all the evidence, but need not view it in the light most favorable to the nonmoving party."[132] The Fifth Circuit has instructed that district courts should "respect the jury's collective wisdom and must not simply substitute its opinion for the jury's," but "if the trial judge is not satisfied with the verdict of a jury, [s]he has the right—and indeed the duty—to set the verdict aside and order a new trial."[133]

## IV. Analysis

Defendant moves for renewed judgment as a matter of law under Rule 50.[134] Defendant alternatively moves for a new trial under Rule 59.[135] The Court addresses each motion in turn.

### A.   *Renewed Motion for Judgment as a Matter of Law Under Rule 50*

At the close of Plaintiff's case-in-chief, Defendant moved for judgment as a matter of law on three issues: (1) Plaintiff's claim for cancellation of the leases, (2) Plaintiff's breach of warranty claims, and (3) Plaintiff's breach of contract claims.[136] Defendant renewed these three motions at the close of its case-in-chief.[137] Defendant now moves the Court for renewed judgment as a matter of law on three issues: (1) Plaintiff's claim for cancellation of the leases, (2) Plaintiff's breach of

---

[131] *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985).

[132] *Id.*

[133] *Id.* (internal quotations omitted).

[134] Rec. Doc. 226.

[135] *Id.* Motions for renewed judgment as a matter of law may be joined with a request for a new trial. *See* Fed. R. Civ. P. 50(b).

[136] *See, e.g.*, Rec. Doc. 213.

[137] *Id.*

contract claims, and (3) Defendant's counterclaim.[138] The Court addresses each request in turn.

### 1. Plaintiff's Claim for Cancellation of the Leases

Defendant's argument in support of its request for judgment as a matter of law on Plaintiff's claim for cancellation of the leases rests on its assertion that the jury instructions were inconsistent and the verdict form confused the jury. Defendant further argues that under the proper standard Plaintiff failed to show substantial impairment. Plaintiff argues that Defendant waived any objection to the jury instruction, and that it nevertheless demonstrated substantial impairment.

### a.   Defendant's Objection to Jury Charge Number 23 and Verdict Form

As a preliminary matter, the Court must consider whether Defendant waived any objection to Jury Charge Number 23 or the verdict form. Defendant itself concedes that it "did not explicitly object to Jury Charge Number 23 during the . . . charge conference."[139] Federal Rule of Civil Procedure 51 provides that "[n]o party may assign as error the giving . . . [of] an instruction unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." A party's failure to object to an instruction may be excused where "the party's position previously has been made clear to the trial judge."[140] Here, Defendant filed a memorandum of law with the parties' pretrial order briefing the Court on its position that a "mere breach of a lease by the lessor . . . does not automatically dissolve a lease."[141] Although Defendant's memorandum does not address the rule that in contracts with reciprocal obligations, a party's subsequent breach is excused if the other party is in breach, it does contend

---

[138] Rec. Doc. 226.

[139] Rec. Doc. 226-1 at 5.

[140] *Russel v. Plano Bank & Tr.*, 130 F.3d 715, 720 (5th Cir. 1997) (quoting Wright & Miller, Federal Practice and Procedure § 2553 (2d ed. 1995)).

[141] Rec. Doc. 139-2 at 17.

that Plaintiff was not entitled to dissolution of the leases as a result of Defendant's breach.[142] Therefore, the Court will assume Defendant has not waived its objection to Jury Charge Number 23.

However, the Court is not persuaded that the jury instructions are internally inconsistent or confusing. The Fifth Circuit will reverse a district court where "jury instructions [are] both erroneous as a matter of law and so internally inconsistent that a rational verdict cannot be envisioned."[143] Here, Jury Charge Number 23 reads:

> When a contract contains reciprocal obligations, which means that each party to the contract owes an obligation to the other, a party cannot assert a claim for breach of contract unless that party has performed its own obligations under the contract. In other words, if one party is the first to breach a contract, the other party's subsequent breach is excused.[144]

This is a correct statement of the law of article 1993 of the Louisiana Civil Code.[145] Moreover, Defendant concedes that the jury was instructed on "the proper, more-specific instruction" on dissolution of leases in Jury Charge Number 31.[146] These two instructions are consistent. Plaintiff asserted claims for both breach of contract *and* for dissolution of the leases. Jury Charge Number 23 contained the proper instruction specific to *breaches of contracts* with reciprocal obligations, while Jury Charge Number 31 instructed the jury on the standard to apply to obtain dissolution of the leases.

---

[142] *Id.* at 19.

[143] *Aero Int'l, Inc. v. U.S. Fire Ins. Co.*, 713 F.2d 1106, 1108 (5th Cir. 1983).

[144] Rec. Doc. 214-2 at 25.

[145] La. Civ. Code art. 1993 ("In case of reciprocal obligations, the obligor of one may not be put in default unless the obligor of the other has performed or is ready to perform his own obligation."). *See also id.* art. 2022 ("Either party to a commutative contract may refuse to perform his obligation if the other has failed to perform . . . ."). Commutative contracts contain reciprocal obligations. *Id.* art. 1911.

[146] Rec. Doc. 226-1 at 6.

Nor is the Court persuaded that the jury was confused by the verdict form. In fact, the jury's verdict strongly suggests that the jury was perceptive, attentive, and detailed in their deliberations. The verdict form instructed the jury to stop answering questions if it answered yes to Question 2 or 3 and the jury had answered Question 5 regarding damages.[147] That is precisely what the jury did. Defendant argues that, because the jury stopped answering questions, it *must not have* considered Defendant's counterclaim. The Court disagrees. The jury deliberated for nearly six hours.[148] Defendant offers no reason to believe that in that time the jury did not consider whether Plaintiff had wrongfully abandoned the leases.

Moreover, the jury's verdict demonstrates just how carefully it reviewed the jury instructions and the evidence. The jury was instructed that an abandonment is the voluntary relinquishment of property with the intent of terminating one's possession.[149] In its verdict, the jury specifically excised Unit 18, because the parties stipulated that Plaintiff never took possession of that unit.[150] The jury was also instructed to award damages only for expenses the prevailing party actually incurred.[151] The jury then reviewed Plaintiff's evidence of lost profit and appropriately reduced the award to prevent awarding Plaintiff lost profit on Unit 18, which it never rented out.[152] When the Court realized that the jury still needed to answer the questions regarding Defendant's counterclaim, the jury retired to finish completing the verdict form. The jury

---

[147] Rec. Doc. 216.

[148] Rec. Doc. 214.

[149] Rec. Doc. 214-2 at 34.

[150] Rec. Doc. 202 at 6; Rec. Doc. 216 at 2.

[151] Rec. Doc. 214-2 at 40.

[152] Rec. Doc. 216 at 2.

completed the form in a manner consistent with its findings on Plaintiff's claims. Namely, the jury found that Plaintiff had not wrongfully abandoned the leases—which is consistent with the jury's understanding that Plaintiff never took possession of Unit 18—and that Plaintiff had not engaged in an unfair trade practice. Given the obvious care and attention with which the jury came to this verdict, the Court is not persuaded by Defendant's argument that they did not consider the counterclaim because they only deliberated for five additional minutes when the Court instructed them to return to the jury room to finish completing the verdict form. As discussed above, the jury previously deliberated for nearly six hours in total, and Defendant offers nothing to suggest that the jury did not consider the counterclaim during the deliberations.

### b. Evidence of Substantial Impairment

Relatedly, Defendant argues that it is entitled to judgment as a matter of law on Plaintiff's claim for cancellation of the leases because Plaintiff did not meet its burden to show substantial impairment of each unit.[153] A Rule 50(b) motion should not be granted "unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion."[154] A court must also "draw[] all reasonable inferences and resolv[e] all credibility determinations in the light most favorable to the non-moving party."[155]

The Court finds that there is a legally sufficient evidentiary basis to support the jury's verdict. The parties stipulated that Plaintiff operated the units as short-term rentals.[156] At trial, Paradela testified about his firsthand observations of visible mold in most of the apartments.

---

[153] Rec. Doc. 226-1 at 10.

[154] *Flowers*, 247 F.3d at 235 (internal citation and quotation marks omitted).

[155] *Id.* (internal citation and quotation marks omitted).

[156] Rec. Doc. 202 at 5.

Paradela explained why environmental conditions might cause low readings of mold in the air even when there is visible mold on the walls. Paradela testified that he found evidence of toxic black mold in many of the units. Paradela further testified about his concerns regarding the elevated moisture levels in multiple apartments and defects in structural components. Paradela noted that he recommended mold remediation for the units. Defendant's expert Driskell also testified to the dangerous health effects of certain molds that were found in elevated levels in the units. The jury also heard evidence that Defendant was on notice of various complaints in every single unit. Based on this evidence, the jury could have reasonably concluded that Plaintiff carried its burden to show by a preponderance of the evidence that mold was present in each of the units.

Given that Plaintiff rented these units as short-term rentals, the jury was free to conclude that toxic and dangerous conditions inside the units substantially impaired Plaintiff's use of the units for their intended purpose. Plaintiff also presented evidence of Defendant's responses to Plaintiff's complaints of mold in the units. The jury, as finder of fact, was tasked with deciding whether to credit Plaintiff's assertion that Defendant failed to perform its obligations, or to credit Defendant's assertion that it timely complied with all requests for maintenance. The jury was likewise free to conclude that Defendant's alleged unwillingness to provide necessary maintenance to the units substantially impaired Plaintiff's use by failing to remedy harmful conditions to Plaintiff's customers. Construing this evidence in the light most favorable to the non-moving party, the Court finds that the facts and inferences do not "point so strongly and overwhelmingly" in Defendant's favor that "reasonable jurors could not reach a contrary conclusion."[157]

### 2. Plaintiff's Claim for Breach of Warranty and Breach of Contract

Next, Defendant moves for judgment as a matter of law on Plaintiff's breach of warranty

---

[157] *Flowers*, 247 F.3d at 235.

and breach of contract claims.[158] Defendant asserts that "[t]he evidence is clear that [Plaintiff] did not maintain the units in good condition, but instead unjustifiably abandoned the units and left the premises to deteriorate."[159] The jury, as finder of fact, was tasked with weighing the credibility of the witnesses. In this case, Plaintiff contended that the leases obligated Defendant to make certain repairs, and that Defendant failed to do so. Stacy Dejan testified on behalf of Plaintiff as to Defendant's responses to Plaintiff's reports of issues in the units. Defendant offered competing testimony about its responses to Plaintiff's complaints. The jury weighed this evidence and concluded that Plaintiff had met its burden to show that Defendant breached its obligations under the leases. A court should not disturb a jury's verdict unless the "inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion."[160] The evidence here does not strongly and overwhelmingly indicate that Plaintiff was in breach of the leases. Therefore, the Court will not disturb the jury's verdict on these claims and denies Defendant's motion for judgment as a matter of law on these issues.

### 3. Defendant's Counterclaim

Finally, Defendant moves for judgment as a matter of law on its counterclaim. Under Rule 50(b), a party may renew its motion for judgment as a matter of law. Because this is a renewal of an earlier motion, "[i]f a party fails to move for [judgment as a matter of law] under Rule 50(a) after all the evidence has been presented, then 'that party waives . . . its right to file a renewed post-verdict Rule 50(b) motion.'"[161] The Fifth Circuit applies a narrow exception to this rule where

---

[158] Rec. Doc. 226-1 at 20.

[159] *Id.*

[160] *Id.* (internal citation and quotation marks omitted).

[161] *Alonso*, 920 F.3d at 883–84 (quoting *Flowers*, 247 F.3d at 238).

"a party makes a Rule 50(a) motion on a substantially similar issue adequate to give notice of the perceived insufficiency [of evidence]."[162] At trial, Defendant did not move for judgment as a matter of law on its counterclaim.[163] However, the Fifth Circuit "routinely excuse[s] technical noncompliance" with Rule 50(b) by applying a "*de minimis* exception" where "the court and the plaintiff are alerted to the grounds on which the defendant contends the evidence is insufficient."[164]

Defendant argues that it did not waive this issue because it "necessarily" moved for judgment as a matter of law on its counterclaim by moving for judgment as a matter of law that Plaintiff was not entitled to cancel the leases. The Court agrees. If Plaintiff failed to carry its burden to show cancellation of the leases, then Defendant was entitled to judgment in its favor on its counterclaim for wrongful abandonment.[165] Nevertheless, for the reasons explained above, the Court concludes that the jury's finding that Plaintiff was entitled to cancellation of the leases is supportable by a reasonable interpretation of the evidence. The facts and inferences do not "point so strongly and overwhelmingly" in Defendant's favor that "reasonable jurors could not reach a

---

[162] *Foreman v. Acceptance Indem. Co.*, 730 Fed. App'x 191, 195 (5th Cir. 2018) (citing *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 288–89 (5th Cir. 2007); *Bay Colony, Ltd. v. Trendmaker, Inc.*, 121 F.3d 998, 1003 (5th Cir. 1997)).

[163] Rec. Doc. 213.

[164] *Taylor Publ'g Co. v. Jostens, Inc.*, 216 F.3d 465, 472 (5th Cir. 2000) (quoting *Greenwood v. Societe Francaise De*, 111 F.3d 1239, 1244–45 (5th Cir. 1997)).

[165] This is not true, however, for Unit 18. As explained above, the parties stipulated that Plaintiff never took possession of Unit 18. Additionally, the jury was instructed that an "[a]bandonment is the voluntary relinquishment of property by its holder, with the intent of terminating its possession and control." Rec. Doc. 214-2 at 34. Given that the parties stipulated that Plaintiff never took possession of Unit 18, no reasonable jury could conclude that Plaintiff intended to terminate its possession. Nor does it follow that Plaintiff breached the lease as to Unit 18. Indeed, "[a] *lessor* can be found in breach of the lease agreement based on his failure to place the lessee in actual possession of the thing leased, which the *lessor* is obliged to do." *Keller Williams Realty v. Melekos*, 2015-0679, p. 4 (La. App. 1 Cir. 11/9/15); 2015 WL 6951406 (emphasis added) (citing La. Civ. Code art. 2682; *Moore v. Cameron Par. Sch. Bd.*, 563 So. 2d 347, 349 (La. App. 3 Cir. 1990)). At trial, the parties did not introduce any evidence about why Plaintiff never took possession of Unit 18. In the absence of any evidence, the jury reasonably concluded that neither party carried its burden as to Unit 18, and Defendant is not entitled to judgment as a matter of law.

contrary conclusion."[166] Therefore, Defendant is not entitled to judgment as a matter of law on its counterclaim.

**B.      *Motion for New Trial***

Defendant moves for a new trial on its Louisiana Unfair Trade Practices Act claim. Alternately, Defendant moves for a new trial on all issues.

### 1.   Louisiana Unfair Trade Practices Act Claim

Defendant's argument in favor of a new trial on its LUTPA claim is premised on its assertion that the allegedly incorrect jury instructions and verdict form led the jury to never even consider its counterclaims. As explained in detail above, the jury's verdict reflects its careful and thorough consideration of the evidence and of the jury instructions. Defendant offers no reason to believe that the jury did not *ever* consider its LUTPA claim during its nearly six hours of deliberating. Given the jury's clearly meticulous and attentive verdict, the Court "respect[s] the jury's collective wisdom," and is "satisfied with the verdict."[167] Therefore, the Court denies Defendant's request for a new trial on its LUTPA claim.

### 2.   All Issues

Finally, Defendant moves the Court for a new trial on all issues "to prevent manifest injustice."[168] Defendant makes three arguments in support of its entitlement to a new trial. First, Defendant reiterates its argument that the jury was confused by the instructions and the verdict form.[169] As noted above, the Court disagrees and finds that the instructions are consistent and that

---

[166] *Flowers*, 247 F.3d at 235.

[167] *Smith*, 773 F.2d at 613 (internal quotations omitted).

[168] Rec. Doc. 226-1 at 22.

[169] *Id.*

the jury was not confused. Second, Defendant argues it is entitled to a new trial because there is insufficient evidence that Plaintiff's use of the units was substantially impaired.[170] Again, as noted above, the Court disagrees and finds that a reasonable jury could have concluded that Plaintiff's use was substantially impaired.

Defendant's remaining argument is that the "Court should grant a new trial to address several erroneous and prejudicial evidentiary rulings."[171] Pursuant to Federal Rule of Civil Procedure 61, "[u]nless justice so requires, no error in admitting or excluding evidence . . . is ground for granting a new trial." In reviewing a district court's evidentiary rulings, "[the Fifth Circuit] will only reverse a district court where there has been a clear abuse of discretion," "and the ruling has harmed the complaining party."[172]

Defendant asserts that the Court erroneously admitted emails and photographs from Basil Lohaza arguing that these emails contained hearsay within hearsay.[173] Defendant argues that "it is 'not enough to say that as a general business matter, [the company] receive[s] and send[s] emails as part of their business model."[174] However, that is not what occurred here. The underlying rationale behind the business records exception "is the reliability of records that the organization plans to rely on at a later time."[175] The Fifth Circuit has explained that "[t]he issue of admissibility

---

[170] *Id.*

[171] *Id.*

[172] *Nicholas v. Homelite Corp.*, 780 F.2d 1150, 1155 (5th Cir. 1986) (first quoting *McNeese v. Reading & Bates Drilling Co.*, 749 F.2d 270, 274 (5th Cir. 1985), and then quoting *Farace v. Indep. Fire Ins. Co.*, 699 F.2d 204, 211 (5th Cir. 1983)).

[173] Rec. Doc. 226-1 at 22–23.

[174] *Id.* (quoting *Marine Power Holding*, 2016 WL 4218217, at *6).

[175] Wright & Miller, Federal Practice and Procedure § 6864 (5th ed. 2019).

under Rule 803(6) is chiefly a matter of trustworthiness."[176] Here, Stacy Dejan testified that it is Plaintiff's standard practice to report maintenance issues to landlords via email. Dejan also testified that Plaintiff made the decision "to try to clean" the units on the basis of Lohaza's email, so there is little reason to doubt its trustworthiness. Additionally, the Court issued a limiting instruction that the statements within the email could not be relied on for their truth. The Court is not persuaded that the jury was confused by its later instruction that the jury would eventually have to determine the truth of Plaintiff's complaints of mold.

To the extent that Defendant argues the photographs attached to the email are also inadmissible hearsay, the Court disagrees. Under Federal Rule of Evidence 801, hearsay is an out of court statement by the declarant introduced for the truth of the matter asserted. The rule defines a "statement" as "a *person's* oral assertion, written assertion, or nonverbal conduct."[177] Further, the rule provides that the "declarant" is "the *person* who made the statement."[178] Ordinarily photographs are non-assertive in nature and are not hearsay.[179] Therefore, the photographs attached to Lohaza's email are not hearsay because they do not make an assertion. Moreover, the Court instructed the jury that it could not accept Lohaza's statements within the email as evidence that the photographs depicted mold. Instead, the Court instructed the jury it had to reach that conclusion if it was supported by other evidence and inferences drawn therefrom. To the extent Defendant argues the photographs are untrustworthy because Lohaza was not present to authenticate them,[180]

---

[176] *Miss. River Grain Elevator, Inc. v. Bartlett & Co.*, 659 F.2d 1314, 1319 (5th Cir. 1981).

[177] Fed. R. Evid. 801(a) (emphasis added).

[178] Fed. R. Evid. 801(b) (emphasis added).

[179] *United States v. Oaxaca*, 569 F.2d 518, 525 (9th Cir. 1978). *See also CDx Holdings, Inc. v. Heddon*, No. 12-126, 2012 WL 13018986 (N.D. Tex. Nov. 9, 2012).

[180] Rec. Doc. 226-1 at 23.

the fact that a person who took a photo is not available to authenticate "go[es] only to the evidentiary weight of [the] exhibit . . . rather than to its admissibility."[181] Therefore, the Court finds no abuse of discretion in the admission of the Lohaza email and photographs.

Likewise, Defendant objects to the Court's admission of the Paradela report as hearsay within hearsay.[182] Even assuming Paradela's report was inadmissible as a business record, Paradela testified live at trial about his firsthand observations of the units and the results of his testing. This testimony was not hearsay because it was not an out-of-court statement and it concerned Paradela's personal observations and conclusions. Defendant objects that the Court "did not give explicit instructions to the jury regarding how they should weigh" Paradela's report.[183] However, because Paradela testified at trial about his observations, the jury was free to assess his credibility and needed no additional limiting instruction. Additionally, the jury was properly and thoroughly instructed on its role in weighing the testimony of witnesses in the Court's preliminary and general instructions.[184] Based on the record before it, the Court is not left with the "firm belief that the verdict is clearly contrary to the weight of the evidence."[185] Accordingly, the Court denies Defendant's motion for a new trial on all issues.

---

[181] *United States v. Clayton*, 643 F.2d 1071, 1074 (5th Cir. Unit B Apr. 1981).

[182] Rec. Doc. 226-1 at 22–23.

[183] *Id.*

[184] *See* 214-2 at 2 (Jury Charge Number 1), 6 (Jury Charge Number 4), 7 (Jury Charge Number 5), 9 (Jury Charge Number 7), 11 (Jury Charge Number 9), 41 (Jury Charge Number 38).

[185] *Smith*, 773 F.2d at 613.

### V. Conclusion

Considering the foregoing reasons, the Court finds that the jury's verdict is supportable by a reasonable interpretation of the evidence. Accordingly,

**IT IS HEREBY ORDERED** that Defendant 635 N. Scott St., LLC's "Renewed Motion for Judgment as a Matter of Law or, Alternatively, New Trial"[186] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this __16th__ day of May, 2022.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[186] Rec. Doc. 226.